**GATLIFF v. HELBURN, Collector of Internal Revenue.**

**No. 1360.**

District Court, E. D. Kentucky.

Feb. 8, 1940.

T. E. Mahan and H. C. Gillis, both of Williamsburg, Ky., for plaintiff.

John T. Metcalf, U. S. Atty., and Claude P. Stephens, Asst. U. S. Atty., both of Lexington, Ky., and Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., John G. Remey, Sp. Asst. to Atty. Gen., E. E. Angevine, Sp. Asst. to Atty. Gen., and H. B. Linton, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

FORD, District Judge.

The administrator of the late Mrs. A. (Florida E.) Gatliff sues to recover alleged overpayments of income taxes, with interest, for the years 1920 and 1921.

Mrs. Gatliff was the owner of an interest in a large acreage of coal lands, a part of which was leased to an operating corporation known as Gatliff Coal Company and another part was leased to and operated by a corporation known as High Splint Coal Company.

Under the lease contracts, the operating companies were obligated to pay the lessors royalties on the coal mined and removed from the premises, computed at specified rates per ton, and Mrs. Gatliff was entitled to receive her proportionate part thereof. The royalties were payable in quarterly installments. Under the Gatliff Coal Company contract, installments were payable within fifteen (15) days after the end of each quarter, and under the High Splint contract installments were payable within twenty (20) days after the end of each quarter.

For the years 1920 and 1921, Mrs. Gatliff elected to file her income tax returns on the cash receipts and disbursements basis and accordingly reported royalties from these companies as follows:

|  | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | $8,484.77 | $ 5,940.49 |
| High Splint Coal Company | 9,375.00 | 12,500.00 |

The amounts so reported are the amounts which were actually paid to and received in cash by Mrs. Gatliff during the calendar years 1920 and 1921, except, instead of $5,940.49 reported as received from the Gatliff Coal Company in 1921, it is stipulated that she actually received $8,077.07.

Upon the books of the companies the total royalties entered to the credit of Mrs. Gatliff were as follows:

|  | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | $ 9,830.18 | $ 7,461.81 |
| High Splint Coal Company | 12,500.00 | 12,500.00 |

In her report, Mrs. Gatliff claimed depletion credits as follows:

|  | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | $6,531.36 | $5,091.21 |
| High Splint Coal Company | 3,856.04 | 5,634.23 |

By deficiency assessments, notice of which was given under date of February 13, 1926, the Commissioner of Internal Revenue increased the assessment of Mrs. Gatliff's gross income for the years in question by assessing to her the full amounts entered to her credit on the books of the companies, and he reduced her depletion credits to the following amounts:

|  | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | $5,944.82 | $1,782.15 |
| High Splint Coal Company | 2,313.63 | 3,634.23 |

It appears from the stipulation that the total tonnage mined by the companies for the years involved and the amounts sold and removed from the premises were as follows:

| Gatliff Coal Company | | |
|---|---|---|
|  | Total Mined | Sold and Removed |
| 1920 | 215,829 | 198,160 |
| 1921 | 169,707 | 150,566 |
| High Splint Coal Company | | |
| 1920 | 77,121 | 77,121 |
| 1921 | 121,141 | 121,141 |

It thus appears that in each year the Gatliff Coal Company mined more coal than it removed from the premises, while the High Splint Coal Company sold and removed its entire production.

The deficiency assessments made by the Commissioner showed a balance of taxes due from Mrs. Gatliff of $659.12 for the year 1920 and $1,059.11 for the year 1921. On May 23, 1931, under protest, she paid these deficiencies, together with accrued interest amounting in the aggregate to $869.43 for the year 1920 and $1,353.16 for the year 1921, and promptly filed her claims for refund. In a communication of August 25, 1932, the Commissioner partially disallowed the claim. He offered to refund $311.83 of the amount paid for 1920 and $243.61 of the amount paid for 1921. The offer was refused and this litigation ensued.

In the claim for refund and likewise in the petition the plaintiff challenges the action of the Commissioner only on the following grounds:

(1) That the Commissioner compelled taxpayer to account for income on the accrued basis, and erroneously refused to allow her to take credit for disbursements upon the same basis;

(2) That the Commissioner erroneously failed to allow taxpayer depletion on all coal mined during the years involved.

The first complaint proceeds upon the assumption that by increasing the taxpayer's gross income by adding to the royalties which she actually received, those which the Commissioner claimed were con-

structively received during the year involved, the Commissioner thereby converted the taxpayer's basis of accounting from the cash receipts and disbursements basis to the accrual basis. Such an assumption seems entirely unwarranted. Treasury Regulation No. 45, Article 23, promulgated under the Revenue Act applicable to the years involved, provides: "A taxpayer is deemed to have received items of gross income which have been credited to or set apart for him without restriction." The application of this regulation did not have the effect of changing the accounting basis from that upon which the taxpayer elected to make the report. Income to which the regulation was properly applicable was regarded as constructively received rather than as accrued. Upon reassessment, the Commissioner had no authority to make a change in the taxpayer's method of accounting unless the method adopted by the taxpayer failed to clearly reflect the true income. See Regulation 45, Art. 22, 1920 Edition. If the Commissioner erred in applying Article 23, Regulation No. 45 and improperly included as income book credits which were neither actually nor constructively received within the year, the remedy to which the taxpayer is entitled is to have the error corrected by elimination of the erroneous charge. The plaintiff claims, however, that the Commissioner's act in assessing the total amount posted on the books rather than the amount actually paid had the effect of arbitrarily converting the accounting basis of the report from that of cash receipts and disbursements to that of accrued receipts and disbursements, and consequently the taxpayer is entitled, as against her gross income so assessed by the Commissioner, to take credit for a large amount of indebtedness which she alleged, although not paid until many years later, had accrued against her in the years 1920 and 1921 under contracts by which she was bound for minimum royalties to one J. B. Lewis, Trustee. As already pointed out, the Commissioner did not alter the basis of the plaintiff's return so as to convert it to an accounting on the accrual basis, hence the claim that the taxpayer is entitled to deduct accrued but unpaid debts must be denied.

By stipulation the parties have submitted the facts bearing upon the question as to the amount of royalties for which Mrs. Gatliff should account as income for each of the years involved and those re-

lating to the question as to the amount which should be allowed her for depletion and have agreed that upon advice from the Court with respect to these matters a judgment will be prepared showing the income tax liability of Mrs. Gatliff for the years 1920 and 1921 and showing the amount of over-assessment to be adjudged herein, if any.

The case being submitted upon these issues by stipulation, the contention that these issues constitute a fatal departure from the claim for refund filed with the Commissioner is untenable. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253.

Under the provisions of the lease contracts referred to, payment of royalty which accrued during the last quarter of each year could not be demanded by Mrs. Gatliff until a specified number of days after the end of the year. Notations made on the books of the operating companies showing royalties accrued to Mrs. Gatliff for the last quarter of the year, but which were not paid during the year, did not constitute income to her within the year for the reason that within the year the funds were neither transferred to her, placed at her disposal, nor made subject to her control. Such entries upon the books of her debtor were evidential of amounts due and payable to her in the future and nothing more. Like other promises to pay money in the future, realization was contingent upon many things, the principal of which was the ability of the promissor to fulfill the obligation. Such book entries were not in any proper sense equivalent to cash. They were not set apart nor credited to Mrs. Gatliff "without restriction" before the close of the particular years in question, and hence, were not susceptible of being treated as constructively received within the meaning of Article 23 of Regulation 45. "Security for a future payment does not transform it into present income." Morris-Poston Coal Co. v. Commissioner of Internal Revenue, 6 Cir., 42 F.2d 620, 622. "Generally speaking, the income tax law is concerned only with * * * realized gains." Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010. "When the profit, if any, is actually realized, the taxpayer will be required to respond." Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 552, 75 L.Ed. 1143. I am of the opinion that Mrs. Gatliff was taxable

498

only with the amounts actually received by her during the calendar years 1920 and 1921, shown by the Stipulation to be as follows:

| | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | $8,484.77 | $ 8,077.07 |
| High Splint Coal Company | 9,375.00 | 12,500.00 |

■ The remaining question involves the proper allowance for depletion.

It is stipulated that Mrs. Gatliff was entitled to compute depletion at the rate of three cents (3¢) per ton. The only question is as to whether the stipulated rate should be applied to the entire Gatliff Coal Company production or is limited to the tonnage mined and removed from the premises during the respective years. The Government contends that depletion is only to be computed upon the tonnage actually removed from the premises for the reason that royalty was paid only on such tonnage. The record shows that not quite all the coal mined by the Gatliff Coal Company was sold and removed from the premises but a portion of the total production was consumed by the company and the miners engaged in the work. Such use of coal in the operation of the business was contemplated in the lease contract and constituted a part of the consideration thereof.

By the Revenue Act of 1918, § 214(a), 40 Stat. 1067, it is provided that, in computing net income in cases involving the mining of natural deposits, there shall be allowed as deduction a reasonable allowance for depletion according to the peculiar conditions in each case. See Regulation 45, Art. 210, 1920 Edition. The purpose of the Statute and the regulations made pursuant thereto is that, in cases where the nature of the enterprise is such that the capital assets are necessarily liquidated in the process of operations, such as in the mining of coal or other natural deposits, the owner of the mineral deposits shall, within the limitations prescribed, secure the return of his capital investment or the value of his capital asset on the basic date, through an aggregate of annual depletion deductions.

By the terms of the contract Mrs. Gatliff, in effect, sold the entire output to the company in consideration of an agreed compensation, the amount of which was arrived at by an agreed method of computation. The mere fact that the amount of coal "mined and removed from the premises" was adopted as the basis upon which

to compute the compensation payable to her does not seem controlling in the determination of the basis upon which to allow depletion. The coal used in the operations together with the coal sold by the lessee made up the sum of Mrs. Gatliff's property which passed to the company under the contract, and although all of it was not taken into account under the method used for the determination of the amount of royalties, nevertheless all of it was an essential factor in the enterprise which created the income derived by the taxpayer. The mining and consumption of it on the premises by the lessee depleted the taxpayer's capital investment no less than if it had been sold and removed from the premises. My conclusion is that, under the peculiar conditions prevailing in this case, against her gross income the taxpayer is entitled to credit for depletion at the stipulated rate of three (3¢) cents per ton on all coal mined during the respective years involved, including that which was consumed in the operations of the mines by operators and miners as well as that which was sold and removed from the premises. Under the stipulation these amounts are as follows:

| | 1920 | 1921 |
|---|---|---|
| Gatliff Coal Company | 215,829 tons | 169,707 tons |
| High Splint Coal Company | 77,121 tons | 121,141 tons |

The parties will recompute the income tax liability of Mrs. Gatliff for the years 1920 and 1921 upon the basis herein indicated and report the results to the Court, together with formal findings of fact and conclusions of law, and judgment in conformity with the recomputation.