**OSTERLOH v. LUCAS, Commissioner of Internal Revenue.**

Circuit Court of Appeals, Ninth Circuit.
January 13, 1930.

No. 5793.

Melvin D. Wilson, Joseph D. Peeler, and Dana Latham, all of Los Angeles, Cal. (Miller, Chevalier, Peeler & Wilson, of Los Angeles, Cal., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Harvey Gamble, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and J. S. Franklin, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This is a petition to review a decision of the Board of Tax Appeals. During the years 1920 and 1921 the petitioner borrowed 5,707 shares of stock of the then value of $36.80 per share, to be used by him as collateral for various bank loans. At the time of borrowing the stock, the petitioner agreed with the lender that he would return the original stock so borrowed, and that if he was unable to do so he would return, in lieu thereof, cash or property in an amount equal to the fair market value of the stock at the date of its receipt, namely, $36.-80 per share. The stock declined in value, and because of the inability of the petitioner to pay his loans to the banks, and his inability to furnish additional collateral, 700 shares of the borrowed stock were sold, during 1923, for the sum of $7,928. In determining his taxable income for that year, the petitioner deducted as a loss sustained during the year the sum of $25,198.30, being the difference between the value of the 700 shares at $36.80 per share and $7,928, the amount realized on the sale of the stock by the banks in which it was deposited as collateral. During the tax year in question, the petitioner kept his accounts on the basis of cash received and disbursed, and, inasmuch as the loss claimed was not actually paid during that year, the Board of Tax Appeals refused to allow the deduction. This refusal on the part of the board is the error complained of.

The petitioner contends that he purchased the stock in 1920 and 1921 and resold a portion of it at a loss in 1923, but the record does not bear out this contention. If it was optional with the borrower to return the property, or its value, the transaction would doubtless constitute a sale, rather than a bailment; but the petitioner had no such general option. The obligation to return the original stock was absolute and unconditional, if in the power of the petitioner so to do. The parties contemplated, however, that the stock might be lost to the lender by reason of the fact that it was to be pledged as collateral security by the borrower, and, if so lost, the measure of the liability of the borrower was agreed upon. In all other respects the obligation of the borrower was as stated. If the stock increased in value, the gain was the gain of the lender, and, if it depreciated in value, the loss was his. In other words, the lender was the general owner of the stock, at all times and for all purposes, until it was sold by the banks for a default in the payment of the loans made to the borrower.

The case then comes down to this: Was the petitioner entitled to deduct a loss which had not been paid and which was not disclosed in his accounts, kept on the basis of cash received and disbursed?

Section 212 of the Revenue Act of 1921 (42 Stat. 237) provides that the net income shall be computed upon the basis of the taxpayer's annual accounting period, in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but, if the method employed does not clearly reflect the income, the computation shall be made on such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. Section 214 provides that, in computing net income there shall be allowed as deductions losses sustained during the taxable year, not compensated for by insurance or otherwise. The method of accounting regularly employed by the petitioner is a recognized one within the meaning of the act, and should be accepted as controlling unless such method does not clearly reflect the income. And it is conceded that the deduction claimed does not appear on the books of the petitioner because of the method of accounting adopted, and that for the same reason an unpaid gain or profit would not appear. The method of accounting thus adopted and recognized will be of little value to either the taxpayer or the government, if the former is at liberty to go outside of the books to show unpaid losses and the latter to show uncollected gains or profits. We do not think that either course is permissible. The case turns largely upon what is meant by the requirement that the method of accounting shall clearly reflect the income. If this requirement is absolute, it is safe to say that books kept on the basis of cash received and disbursed will rarely, if ever, reflect the true income, because nearly always at the end of a tax year accounts due the taxpayer will remain uncollected and some of his own obligations will remain unpaid. But we do not think that any such literal construction was contemplated. In our opinion, all that is meant is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the

taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax. This construction may work to the disadvantage of the taxpayer or the government at times, but if followed out consistently and honestly year after year the result in the end will approximate equality as nearly as we can hope for in the administration of a revenue law.

In the solution of this question, we have found but little aid in the authorities cited. It is conceded that the decisions of the board itself are somewhat conflicting, and the only judicial decision called to our attention is an unreported case in which no opinion was filed.

While the question is not free from doubt, we see no adequate reason for disturbing the conclusion of the Board of Tax Appeals, and its decision is therefore affirmed.