**ASPHALT PRODUCTS CO., INC.,**
**Petitioner-Appellant,**
**Cross-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee,**
**Cross-Appellant.**

Nos. 84–1841, 84–1882.

United States Court of Appeals,
Sixth Circuit.

Argued March 4, 1986.

Decided July 17, 1986.

Rehearing and Rehearing En Banc
Denied Sept. 25, 1986.

Mark H. Westlake (argued), Tune, Entrekin & White, Nashville, Tenn., for petitioner-appellant, cross-appellee.

Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Glenn L. Archer, Jr. (Lead Counsel), Michael L. Paup, Dept. of Justice, Tax Div., Washington, D.C., Richard Farber (argued), Michael J. Roach, for respondent-appellee, cross-appellant.

Before LIVELY, Chief Judge, and JONES and NELSON, Circuit Judges.

LIVELY, Chief Judge.

This tax case presents issues related to the method of accounting employed by a taxpayer and the application of the negligence penalty provided for in section 6653 of the Internal Revenue Code (the Code), 26 U.S.C. § 6653 (1982). Asphalt Products Co., Inc. (the taxpayer) appeals from a decision of the United States Tax Court upholding an income tax deficiency assessment by the Commissioner of Internal Revenue (the Commissioner) for 1974. The Tax Court also affirmed the addition of a five percent negligence penalty on the total deficiency. The Commissioner has filed a protective cross-appeal with respect to that portion of the decision of the Tax Court which credited the taxpayer with overpayments of its income taxes for 1975 and 1976. If this court should reverse the finding of a deficiency for 1974 based on the conclusion that the Commissioner erred in requiring the taxpayer to change its method of accounting, it would be necessary to recalculate the taxpayer's income tax liability for 1975 and 1976.

## I.

### A.

The taxpayer produces and sells emulsified asphalt, a road paving material. Its principal customers are county governments in its general area of Tennessee. The counties share in state gasoline taxes,

and these taxes provide the revenues required for road construction and maintenance. The Arab oil embargo of 1973 created a double-barreled problem for the counties. The price of emulsified asphalt, whose principal ingredient is a residue from the refining of oil, rose rapidly, while the consumption of gasoline dropped sharply. Because of this combination of circumstances the taxpayer's accounts receivable increased from $72,000 on January 1, 1974 to $264,000 on the first day of 1975.

The oil embargo had an additional direct effect on the taxpayer's operations. Because emulsified asphalt cannot be used in cold weather, until 1973 the taxpayer never carried any inventory of asphalt or raw materials through the winter. Instead, it finished its run in December and closed its operation down completely for several weeks before the end of the year. As a result of the embargo, the suppliers of petroleum residue made allocations to their customers and required each to take its allocation every month or lose the right to receive raw materials in subsequent months. After having only nominal ending inventories through 1973, the taxpayer had inventories on hand of $25,800 at the end of 1974 and $36,000 at the end of 1975. When more normal conditions returned, inventories at the end of 1976 fell to $1,583.

### B.

From its inception the taxpayer employed the cash receipts and disbursements method of accounting. The Commissioner determined that the cash method did not accurately reflect the taxpayer's income, and assessed a deficiency for 1974 by recomputing the taxpayer's income using the accrual method of accounting. The Commissioner found that the use of inventories was necessary in order to reflect the taxpayer's income accurately, and applied the rule that a taxpayer must use the accrual method of accounting where inventories are a significant income-producing factor. The Commissioner also found that the fluctuations in accounts receivable made use of the cash method inappropriate because its use resulted in a "mismatching" of receipts from sales and cost of sales.

The taxpayer petitioned the Tax Court for redetermination of the deficiency. The Tax Court found that the Commissioner acted properly in requiring the taxpayer to change to an accrual method of accounting, and upheld the deficiency determinations.

### C.

The taxpayer claimed a deduction of $1,103 on its 1974 return for the expenses of transporting personal property of two shareholders from California to Tennessee. The taxpayer took delivery of two new trucks in California and sent its drivers there to bring the trucks to Tennessee. The two principal shareholders of the taxpayer had purchased wastewater treatment plants in California to use in a Tennessee development. The truck drivers hauled the plants to Tennessee, using the new trucks they picked up in California, and the taxpayer deducted the salaries and reimbursed expenditures of the drivers as business expenses.

The taxpayer conceded in the Tax Court that the deduction for salaries and expenses of the drivers was not properly taken. The Commissioner assessed a 5% negligence penalty on the entire deficiency rather than assessing it only on the deficiency resulting from the improper deduction. The penalty exceeded $6,900, though the improperly claimed deduction was only $1,103. The Tax Court affirmed this addition to tax for 1974.

### II.

### A.

With respect to methods of accounting, § 446 of the Code, in applicable part, provides:

**§ 446. General rule for methods of accounting**

   **(a) General Rule.**—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

**(b) Exceptions.**—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

**(c) Permissible methods.**—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

26 U.S.C. § 446 (1982). Treasury Regulations follow the statute and permit a taxpayer to compute taxable income under either the cash or accrual method and require that taxable income be computed on the basis of the same method of accounting regularly used in keeping the taxpayer's books. 26 C.F.R. § 1.446–1(a). Reflecting the provisions of Code section 446(b), an exception to this general rule appears in 26 C.F.R. § 1.446–1(b)(1):

(b) *Exceptions.* (1) If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation of taxable income shall be made in a manner which, in the opinion of the Commissioner, does clearly reflect income.

In addition there is a special rule related to inventories in 26 C.F.R. § 1.446–1(c)(2)(i):

(2) *Special Rules.* (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

A related regulation describes the conditions under which the use of inventories is necessary:

In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor.

26 C.F.R. § 1.471–1.

### B.

From the foregoing code provisions and regulations the Commissioner argues that the use of inventories is necessary in order to reflect the taxpayer's taxable income correctly since the production and sale of merchandise is an income-producing factor. The use of inventories being necessary, the accrual method of accounting must be used. Thus, the Commissioner asserts, he did not abuse his discretion in requiring the taxpayer to adopt the accrual method. In the alternative, the Commissioner contends that the presence of a significant amount of accounts receivable in 1974 and subsequent years resulted in a substantial distortion when the cash method of accounting was used. The failure to match sales with the true costs of goods sold produced a return that did not accurately reflect income. Based on the grant of discretion in § 446 of the Code, the Commissioner maintains that he acted properly in requiring the taxpayer to adopt the method of accounting that would "clearly reflect" its income.

The taxpayer contends that the Commissioner abused his discretion. Since the taxpayer had fairly and consistently reported its income for many years on a cash basis and the increase in inventories and accounts receivable resulted from forces over which it had no control, the taxpayer argues that the Commissioner acted arbitrarily. Inventories became "necessary" only by reason of a temporary and "aberrational" condition, not because the ordinary operation of its business required them. Recognizing the fact that the Commissioner has broad discretion to require a change of accounting methods, the taxpayer argues the authority to do so is limited to cases where "the method used does not clearly reflect income," 26 U.S.C. § 446(b), and this is not such a case. The taxpayer

relies on the second "special rule" contained in 26 C.F.R. § 1.446–1(c)(2)(ii):

> No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year.

The taxpayer's argument turns the negative statement of the regulation into a positive rule that *if* all items of gross profit and deductions are treated with consistency from year to year, the method of accounting *must* be regarded as clearly reflecting income.

### III.

The Commissioner acts for the Secretary of the Treasury and § 446 of the Code clearly gives the Secretary very broad discretion to require a particular method of accounting. The only limitation on the exercise of this discretion appears to be that the method in use does not clearly reflect income and that a different method is required to do so. However, this preliminary determination is also left to the Commissioner. The Supreme Court has construed § 446 [formerly § 41 of the 1939 Code] as follows:

> The Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income, *Lucas v. American Code Co.*, 280 U.S. 445, 449 [50 S.Ct. 202, 203, 74 L.Ed. 538]; *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 189–190 [77 S.Ct. 707, 712–13, 1 L.Ed.2d 746] and under § 41 of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 41, the Commissioner, believing that the accounting method employed by a taxpayer "does not clearly reflect the income," may require that "computation shall be made in accordance with such method as in [his] opinion ... does clearly reflect the income."

*Commissioner of Internal Revenue v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1281, 3 L.Ed.2d 1360 (1959). Thus, § 446 gives the Commissioner discretion with respect to two determinations. The Commissioner first determines whether the accounting method chosen by a taxpayer clearly reflects income. If the Commissioner concludes that the taxpayer's chosen method does not meet this standard, he has the further discretion to require that computations be made under the method which, in his opinion, does clearly reflect income. It would be difficult to describe administrative discretion in broader terms.

It is the taxpayer's position that the requirement that a method of accounting clearly reflect income is not absolute, in that it does not require an exact matching of receipts from the sale of products with the costs of goods sold. If the requirement were absolute, it contends, the cash receipts and disbursements method of accounting would never be permitted because that method admittedly is inexact. Yet the Code and regulations do recognize and permit use of the cash method. The taxpayer urges us to follow cases which have held that the requirement is not absolute and that the Commissioner exceeds his authority when he insists that a taxpayer change from a method that has been fairly and consistently employed unless there has been some attempt to manipulate records or evade the payment of taxes. In *Osterloh v. Lucas*, 37 F.2d 277, 278–79 (9th Cir.1930), the court stated:

> In our opinion, all that is meant [by the requirement that the method of accounting shall clearly reflect the income] is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax.

*Osterloh* has been cited by the Tax Court as stating a general principle, though we have found no case where it has been followed in circumstances like those of the present case.

The taxpayer also relies on two decisions from this court, both of which are distinguishable. In *Morris-Poston Coal Co. v. Commissioner of Internal Revenue*, 42

F.2d 620 (6th Cir.1930), the Commissioner based a deficiency assessment on his finding that a taxpayer had changed its method of accounting without prior approval. The court concluded that the facts did not support this finding and reversed an order of the Board of Tax Appeals upholding the deficiency assessment. The significant difference between the present case and *Morris-Poston* is that the Commissioner in *Morris-Poston* failed to make a determination that the accounting method employed by the taxpayer did not clearly reflect income. Rather the Commissioner sought to require the taxpayer to accrue rental income on the erroneous finding that the taxpayer had changed its accounting method without prior approval. As the court pointed out, "... the right of the commissioner to reject the taxpayer's theory of income in this kind of a case stands upon the Commissioner's preliminary finding that the method employed by the taxpayer did not clearly reflect the income." *Id.* at 621. The authority to require a taxpayer to change its accounting method is not available for enforcement of other Code provisions. It may be used only as provided in § 446, after a determination has been made that the method in use does not clearly reflect income.

*Glenn v. Kentucky Color & Chemical Co.,* 186 F.2d 975 (6th Cir.1951), may be distinguished on the same basis. The Court in *Kentucky Color* stated:

> The Commissioner does not here assert, and so far as this record shows has never asserted that the taxpayer's method of accounting and reporting its taxes did not clearly reflect its income. He asserts that the method used is the accrual method and that therefore the Commissioner was authorized to order the accrual of the items involved. But the Commissioner's authority to order a change in accounting methods when the taxpayer has regularly employed a consistent method depends upon his finding that the taxpayer's method does not clearly reflect the income.

*Id.* at 977 (citation omitted). The same fact distinguishes *Magnon Service Electric*

*Corp. v. Commissioner of Internal Revenue,* 73 T.C. 980 (1980), a recent decision which cited *Osterloh.* In *Magnon* the Commissioner based a deficiency upon a finding that the taxpayer should have used the percentage of completion method rather than the cash receipts and disbursements method of accounting with respect to long-term construction contracts. The Commissioner made no express determination under § 446 that the cash method of accounting did not clearly reflect income.

In each of the cited cases other than *Osterloh* the courts have concluded that the Commissioner was seeking to exercise a statutory power without making a preliminary determination which the statute establishes as a prerequisite. These cases do not limit the Commissioner's discretion when § 446 is properly applied. Instead, they stand for the proposition that the Commissioner cannot resort to his § 446 authority to require a change in accounting method just because he disagrees with a taxpayer's choice of method. That is not the situation in the present case. Here the Commissioner concluded that the cash method did not clearly reflect the taxpayer's 1974 income because inventories were a necessary element of its income-producing activities and the presence of substantial accounts receivable at the end of the year meant that the cost of goods sold had been deducted while the proceeds from the sales of these goods had not been included in income. This "mismatching" resulted in reporting that did not clearly reflect income.

■ When the Commissioner concludes that a taxpayer's method of accounting does not clearly reflect income, the taxpayer has a heavy burden to show that the Commissioner has abused his discretion. A taxpayer does not overcome that burden by merely showing that it has "fairly and consistently" reported its income in the past. As in the present case, a change in conditions might render the past method of accounting inaccurate. Though the temporary increase in inventory in the present

case was not significant, the large increase in accounts receivable created a situation where only use of the accrual method of accounting would avoid a serious distortion. Under these circumstances, the Commissioner's finding that the cash method no longer clearly reflected the taxpayer's income was fully supported by the record and the requirement that the taxpayer adopt the accrual method for 1974 and subsequent years was not an abuse of discretion.

We agree with the court in *Caldwell v. Commissioner of Internal Revenue*, 202 F.2d 112, 114–15 (2d Cir.1953), where it stated that the requirement that books reflect income "clearly" means "accurately," not just "fairly and honestly." Where the Commissioner has determined that the accounting method used by a taxpayer does not clearly reflect income, in order to prevail, "the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner." *Wilkinson-Beane, Inc. v. Commissioner of Internal Revenue*, 420 F.2d 352, 356 (1st Cir.1970).

■ We realize that the result seems harsh in this case. If the temporary and rather insignificant increase in inventories of raw materials had been the only basis for the Commissioner's determination, we would have been inclined to find an abuse of discretion. We do not construe the Code provisions and regulations relating to inventories in the absolute terms adopted by the Commissioner and the Tax Court. However, the taxpayer's method of accounting did not produce an accurate picture of its 1974 income. The income tax is structured on an annual basis. Using the cash method, the cost of materials sold in 1974 was deducted on the 1974 return, yet the proceeds from that portion of the same sales represented by the accounts receivable were not included in the taxpayer's gross receipts as reported on its return. Unlike the inventory item, the accounts receivable were not negligible before 1974 and did not shrink even to their former size at the end of the oil emergency. The tax-

payer had accounts receivable of $238,000 at the end of 1976. These facts supported the Commissioner's determination that the cash receipts and disbursements method did not clearly reflect the taxpayer's income.

## IV.

■ Section 6653(a) of the Code, in its entirety, provided:

(a) **Negligence or intentional disregard of rules and regulations with respect to income or gift taxes.**—If any part of any under payment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

The Commissioner found that the taxpayer acted negligently in claiming a deduction for the cost of transporting the wastewater treatment plants to Tennessee. On the basis of this finding, the Commissioner added a 5% penalty to the entire deficiency assessment. Since the total deficiency assessment was more than $133,000, this resulted in a penalty of $6,943, though the deficiency attributable to the deduction was only the portion of the whole representing the tax on $1,103. The Tax Court upheld the Commissioner, concluding that the Code requires an addition of 5% to the entire underpayment.

There is case law to support the decision of the Tax Court. See *Vnuk v. Commissioner of Internal Revenue*, 621 F.2d 1318 (8th Cir.1980); *Abrams v. United States*, 449 F.2d 662 (2d Cir.1971). These cases bear no resemblance to the present case. In both there were egregious attempts to avoid the payment of taxes and one is left wondering how the taxpayers avoided the 50% fraud penalty imposed by § 6653(b) of the Code. In *Abrams* the taxpayer argued that literal application of § 6653(a) would lead to an absurd result where a "compara-

tively insignificant item of income is negligently omitted." The court responded:

> That case is not before us on this appeal and we therefore express no opinion whatever as to its proper disposition if it should ever arise.

449 F.2d at 664.

"That case" is now before us. The bulk of the deficiency arose from the taxpayer's consistently following its accounting practices. In contesting the Commissioner's deficiency determinations it relied on decisions of this court that arguably supported its position. The Commissioner did not claim a negligence penalty with respect to the actions of the taxpayer that resulted in all but a few hundred dollars of the $133,000 deficiency assessment. The taxpayer did not concede that it was negligent in claiming the disallowed deduction; it merely conceded that the deduction was erroneously claimed. We will not let the tail wag the dog. "Under all the circumstances of the instant case," *Frederick W. Finney,* T.C. Memo 1980–23, we conclude that the § 6653(a) penalty should be applied only to that portion of the deficiency attributable to the disallowed deduction.

The decision of the Tax Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. The cross-appeal is dismissed. No costs are allowed.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I concur wholeheartedly in Part IV of the court's opinion. Where the taxpayer is subject to a penalty only because of the negligent omission of a comparatively insignificant item of income, and the Commissioner also asserts that there is a large underpayment not claimed to be due to negligence, I agree with the court that it would be absurd to let the Commissioner calculate the negligence penalty by applying the statutory percentage to the sum of the negligent and non-negligent underpayments. The absurdity is compounded where, as here, it is a close question whether the non-negligent "underpayment" was

an underpayment at all. The Tax Court clearly erred in failing to limit the measure of the negligence penalty to the underpayment that was negligent.

With respect to Part III of the court's opinion, I agree that the temporary and rather insignificant increase in the taxpayer's raw material inventories was probably not sufficient, in itself, to justify a forced change in accounting methods. I concur in the court's conclusion on this point notwithstanding that the regulations, if they may be enforced in accordance with their terms, would apparently require the use of accrual accounting by anyone engaged in the kind of business in which this taxpayer was engaged.

The Commissioner's argument, as I understand it, boils down to this:

—26 C.F.R. § 1.471–1 says that "inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor;"

—26 C.F.R. § 1.446–1(c)(2)(i) says that "[i]n any case in which it is necessary to use an inventory the accrual method of accounting must be used...."

—The production, purchase, or sale of merchandise is unquestionably an income-producing factor in the case at bar, so this taxpayer is automatically required to use the accrual method of accounting.

The Commissioner's logic seems unassailable on its face, but if we look beyond the language of the regulations I think we shall see several problems with the Commissioner's conclusion.

In the first place, the result produced here by a strict application of the regulations is hard to reconcile with the statute. 26 U.S.C. § 446(a) provides, subject to only two exceptions, that taxable income "shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." The law thus "plainly recog-

nizes" that, as this court has repeatedly declared, "the selection of the system or method of keeping his books is primarily for the taxpayer." *Morris-Poston Coal Co. v. Commissioner of Internal Revenue,* 42 F.2d 620, 621 (6th Cir.1930); *Glenn v. Kentucky Color & Chemical Co.,* 186 F.2d 975, 977 (6th Cir.1951). The Secretary of the Treasury, and the Commissioner as his designee, have discretion to require the use of a particular method of accounting only where "no method of accounting has been regularly used by the taxpayer" (a situation that does not obtain here) or where "the method used [by the taxpayer] does not clearly reflect income." 26 U.S.C. § 446(b). Except where one of those two conditions has been shown to exist, the taxpayer enjoys an express statutory right to elect to "compute taxable income under ... the cash receipts and disbursements method." 26 U.S.C. § 446(c).

Given that statutory right, I do not see how the regulations can be permitted automatically to require this taxpayer to use an accrual method of accounting unless we are prepared to accept the proposition that the Commissioner, by regulation, has made a valid determination that the cash method of accounting "does not clearly reflect income" in *any* case in which the production, purchase, or sale of merchandise is an income-producing factor. Such a determination would seem overbroad, particularly when we recall it is beyond dispute that the cash method of accounting *did* clearly reflect the income of this very taxpayer prior to 1973.

In the second place, although the Tax Court may in this instance have accepted the Commissioner's argument that as a matter of regulatory law the cash method can never clearly reflect any merchant's income, the Tax Court has frequently refused to construe the regulations in such absolute terms. As the Court of Appeals for the First Circuit pointed out in *Wilkinson-Beane, Inc. v. Commissioner of Internal Revenue,* 420 F.2d 352 (1st Cir.1970) (a case the holding of which would require affirmance of the Tax Court's decision here for other reasons):

"The Tax Court, in a variety of contexts, has recognized that the presence of inventories does not necessarily mean that the cash basis does not clearly reflect income. *See, e.g., Ezo Products, Co.,* 37 T.C. 385, 393 (1961); *Estate of Howard T. Roe,* 36 T.C. 939, 952 (1961); *Michael Drazen,* [34 T.C. 1070] at 1079 [ (1960) ]; *Stanford R. Brookshire,* 31 T.C. 1157, 1166 (1959), *aff'd,* 273 F.2d 638 (4th Cir.), *cert. denied,* 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523 (1960); Theodore H. Beckman, 8 B.T.A. 830, 831 (1927); 2 J. Mertens, Law of Federal Income Taxation § 16.03, at 6 (Malone rev. ed. 1967); *contra* Harry Hartley, 23 T.C. 353, 358 (1954)." 420 F.2d at 355–56, n. 9.

In the third place, the testimony of the only witness offered by the Commissioner in this case flatly contradicts the reading of the regulations for which the Commissioner now contends. Notwithstanding that this taxpayer has always been engaged in the production, purchase, or sale of merchandise, and notwithstanding that it has thus always been "necessary [for this taxpayer] to use an inventory," the witness testified that "so long as the accounts that affect the difference between the cash receipts and disbursements method and the accrual method do not change materially, *they could stay on [the cash] method.*" (Emphasis supplied.)

Therefore, notwithstanding the seemingly unambiguous language of the regulations, I concur in the judgment that the regulations relating to inventories may not be construed in the absolute terms adopted by the Commissioner and the Tax Court.

This brings me to the question whether we must uphold the Commissioner's finding that the cash method did not clearly reflect this taxpayer's post-1973 income because of the presence of significant accounts receivable in 1974 and subsequent years. I would be inclined to answer this question differently than the court has done.

This taxpayer had accounts receivable on its books at the end of the 1974 tax year, to

be sure, but that was true of tax years before 1974 as well. Unless all its sales were made C.O.D., the business could always be expected to have accounts receivable at year end, with the result that its income in any given year, computed on a cash basis, could always be expected to differ from the income that would be reflected for that year under an accrual method of accounting. The differences ought to wash out over the life of the business, of course, and the mere existence of a difference, in a particular year, could not mean that either method failed clearly to reflect income. If Congress had intended otherwise it almost certainly would not have required taxable income to be computed under the accounting method regularly employed by the taxpayer, as opposed to requiring anyone engaged in the production, purchase or sale of merchandise to use an accrual accounting method. Neither would Congress have said, as it did say in 26 U.S.C. § 446(c), that a taxpayer "may" use "any" of a list of accounting methods headed, rather conspicuously, by the cash method. As the Tax Court has reminded us in this very case, the Commissioner "has no authority to force a taxpayer to change from a method which does clearly reflect income to another method which in his opinion more clearly reflects income;" and the statute, as this court declared in *Glenn v. Kentucky Color & Chemical Co.*, 186 F.2d 975, 977, *supra*, does not require of the taxpayer's accounting method "absolute precision."

It is true that because of the cash crunch experienced by the taxpayer's customers as a result of the Arab oil embargo, the taxpayer's accounts receivable—which, as the court acknowledges, were not negligible before 1974—had increased greatly by the end of 1974, and had not shrunk even to their former size by the end of 1976. Under the taxpayer's cash accounting method, however, the decline in the taxpayer's income was less than it otherwise would have been because of a partially offsetting increase in the taxpayer's accounts payable. Just as the taxpayer's customers were taking longer to pay their bills, so the taxpayer was taking longer to pay its own bills—and under the cash method of accounting, the latter circumstance obviously worked to the advantage of the tax collector.

As the following chart shows, there was roughly a threefold increase in both the taxpayer's accounts receivable and its accounts payable between the beginning of 1974 and the end of 1976:

| | 1/1/74 | 12/31/76 |
|---|---|---|
| Accounts Receivable | $72,304.59 | $238,689.53 |
| Accounts Payable | 28,700.82 | 84,215.35 |

At the end of 1976, the gap between the taxpayer's accounts receivable and its accounts payable had increased by only $110,870.41; yet the accounting change imposed by the Commissioner caused a $258,075.63 jump in the taxpayer's 1974 income. The change in accounting methods thus boosted the taxpayer's income for that one year by more than 230% of the increase in the taxpayer's accounts receivable, net of accounts payable, over the entire three year period.

This result, as the court suggests, seems harsh. It seems especially so when we recall that the reason the taxpayer is being required to pay substantially *more* in taxes for 1974 is that it received substantially *less* in actual cash revenues that year. Recognizing, as we must, that the way in which this taxpayer was applying its regular accounting method was unquestionably correct (a circumstance that sharply distinguishes this case from *Commissioner of Internal Revenue v. Hansen*, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959), where accrual basis taxpayers were using accrual accounting in a way which was highly questionable under the statute and which "might well [have afforded] opportunities to accrual basis taxpayers to allocate income to years deemed most advantageous" (360 U.S. at 467, 79 S.Ct. at 1281)), it is hard to avoid the conclusion that the curbstone equities favor the taxpayer here.

This taxpayer is also aided, I believe, by the holding of this court in *Morris-Poston*

*Coal Co. v. Commissioner of Internal Revenue,* 42 F.2d 620 (6th Cir.1930), a case which is closely analogous to this case on its facts. There, as here, the taxpayer was on a cash accounting basis. At the end of the year 1921 the taxpayer had on its books a $108,000 receivable that would have been included in 1921 income had it been paid when due; because of a business depression, however, there was some delay in payment and the taxpayer did not actually receive the money until 1922. The Commissioner insisted that the account owed the taxpayer at the end of 1921 should have been accrued as 1921 income, just as he insisted that the money owed the taxpayer in this case at the end of 1974 should have been accrued as 1974 income. This court pointed out, in *Morris-Poston,* that the Commissioner's right to compel the taxpayer to account for the $108,000 as 1921 income, even though the money was not actually received in that year, "stands upon the Commissioner's preliminary finding that the method employed by the taxpayer did not clearly reflect the income." The Commissioner did not deny that the taxpayer's 1921 tax return clearly reflected its 1921 income, said the court, *"unless for the fact that it contemplated assigning to the year 1922 this [$108,000] income, which was in fact received in that year."* 42 F.2d at 621. (Emphasis supplied.) "The only question," the court concluded, "is whether the [return] truly reflected the taxpayer's income for 1921; and we think it did." 42 F.2d at 623.

The Commissioner did argue, unsuccessfully, that the taxpayer in *Morris-Poston* had changed its method of accounting without prior approval, but that fact does not distinguish *Morris-Poston* from this case if it was also the Commissioner's position, as it seems to have been, that the taxpayer's accounting method did not clearly reflect the taxpayer's income for 1921.

This court did not, in *Morris-Poston,* explicitly follow the decision handed down earlier that year in *Osterloh v. Lucas,* 37 F.2d 277 (9th Cir.1930). In *Glenn v. Kentucky Color & Chemical Co.,* 186 F.2d 975, *supra,* however, (a per curiam opinion by

Chief Judge Hicks and Circuit Judges Simons and Allen), this court did cite *Osterloh* in support of the proposition that "[t]he statute requires *only* that the taxpayer's books shall be kept fairly and honestly, without any attempt to evade the tax." 186 F.2d at 977. (Emphasis supplied.) There may be much to be said for the position, advanced in *Caldwell v. Commissioner of Internal Revenue,* 202 F.2d 112 (2d Cir.1953), and *Wilkinson-Beane, Inc. v. Commissioner of Internal Revenue,* 420 F.2d 352, *supra,* that the statute does not require "only" that the books be kept fairly and honestly, but also requires, as the *Wilkinson-Beane* court put it, that the taxpayer's accounting method reflect his income "with as much accuracy as standard methods of accounting permit." 420 F.2d at 356. That position is contrary to the one taken by this court in *Glenn,* however, as *Wilkinson-Beane* noted (see 420 F.2d at 356, n. 12), and I am not sure we ought to follow *Wilkinson-Beane* without explicitly overruling our decisions in *Glenn* and *Morris-Poston.*

*Osterloh,* the Ninth Circuit decision applied by this court in *Glenn,* was a case in which the Commissioner required the taxpayer to continue to adhere to the cash method of accounting where the use of that method happened to work to the Commissioner's advantage. The reasons given by the court in upholding the Commissioner are instructive:

"The method of accounting regularly employed by the petitioner [the cash receipts and disbursements method] is a recognized one within the meaning of the act, and should be accepted as controlling unless such method does not clearly reflect the income.

. . . . .

If [the requirement that the method of accounting clearly reflect income] is absolute, it is safe to say that the books kept on the basis of cash received and disbursed will rarely, if ever, reflect the true income, because nearly always at the end of a tax year accounts due the

taxpayer will remain uncollected and some of his own obligations will remain unpaid. But *we do not think that any such literal construction was contemplated.* In our opinion, all that is meant is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax. *This construction may work to the advantage of the taxpayer or the government at times, but if followed out consistently and honestly year after year the result in the end will approximate equality as nearly as we can hope for in the administration of a revenue law."* 37 F.2d at 278–79. (Emphasis supplied.)

Citing *Wilkinson-Beane, Inc. v. Commissioner,* ¶ 69,079 P–H Memo T.C. (1969), *aff'd.* 420 F.2d 352 (1st Cir.1970), the opinion of the Tax Court in the instant case says that "[t]he test in *Osterloh v. Lucas* has been narrowed by code changes and by new regulations and does not apply where the production, purchase, or sale of merchandise is an income-producing factor and where it has been determined that income is not clearly reflected in petitioner's method." I do not think this will wash in a circuit in which *Morris-Poston* and *Glenn* still constitute binding precedent. As to the "code changes" of which the Tax Court speaks, I know of none that is relevant. As to the regulations on the taxation of businesses in which the production, purchase or sale of merchandise is an income-producing factor, we have seen that these regulations are not controlling here. And as to the Commissioner's determination that "income is not clearly reflected in petitioner's method," the validity of that determination is precisely what we are to decide—and the logic of *Osterloh v. Lucas,* like the logic of *Morris-Poston* and *Glenn,* says that this determination must not be permitted to stand.

Accordingly, and with respect, I dissent from the court's decision to uphold the Commissioner's determination. I would re-

verse the decision of the Tax Court insofar as it denies the taxpayer the right to calculate its 1974 income under the method of accounting regularly used in prior years, and I would hold for the Commissioner on his protective cross-appeal from the Tax Court's decision that the taxpayer overpaid its 1975 and 1976 income taxes.