RALSTON DEVELOPMENT CORPORA-
TION, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

Nos. 89–1144, 89–1243.

United States Court of Appeals,
Tenth Circuit.

June 25, 1991.

Charles Bricken, Atty. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Gilbert S. Rothenberg, Attys. (Michael J. Norton, U.S. Atty., of counsel), with him on the briefs), Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

C. Scott Crabtree of Inman, Erickson & Flynn, Denver, Colo. (Michael T. McDonnell, Englewood, Colo., with him on the briefs), for plaintiff-appellee.

Before LOGAN and MOORE, Circuit Judges, and GREENE, District Judge.[*]

LOGAN, Circuit Judge.

Taxpayer, Ralston Development Corporation (Ralston),[1] brought suit in the district court seeking a refund of federal income taxes assessed and collected by the Internal Revenue Service (IRS). The district court entered judgment on a jury verdict in favor of Ralston for all taxes paid plus interest. The district court also awarded Ralston attorney's fees, expert witness fees, and costs under § 7430 of the Internal Revenue Code (I.R.C.), 26 U.S.C. § 7430. The government now appeals, arguing that the district court erred: (1) by refusing either to direct a verdict or grant judgment notwithstanding the verdict in favor of the government or to give the government's tendered instruction defining a "clear reflection of income;" and (2) by finding that Ralston was a "prevailing party" entitled to its litigation costs.

During the years pertinent to this appeal, Ralston manufactured, supplied, and maintained an inventory of water treatment control system parts and components. Ralston always has used the accrual method of accounting to prepare its financial statements and the cash method of accounting to prepare its income tax returns. Several IRS audits of Ralston approved its use of the cash method of tax reporting.

In 1982, the IRS audited Ralston for the tax years 1979, 1980, and 1981. As a result, the IRS determined that Ralston should have used the accrual rather than the cash method of accounting for tax purposes because the cash method did not clearly reflect Ralston's income. Based on

---

[*] The Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

1. Ralston is the successor to Utility Control and Equipment Corporation, which filed the returns. For purposes of this appeal, the two companies will be treated and referred to as Ralston.

this determination, the IRS made an upward adjustment to Ralston's 1979–81 taxable income of almost $2,000,000. The IRS also determined that an embezzlement loss for which Ralston had taken deductions on its 1979 and 1980 tax returns was not discovered during 1979 and that, as of the close of Ralston's 1980 taxable year, a reasonable expectation of recovering the loss existed.[2] Accordingly, the IRS disallowed the related deductions taken in those years. As a result of these adjustments, the IRS assessed deficiencies of $408,950.23 and $268,439.46 for Ralston's 1980 and 1981 taxable years, reduced the amount of a 1979 loss reported by Ralston, and disallowed in part Ralston's claim that it was entitled to a refund for the 1978 taxable year.

After paying the 1980 and 1981 deficiencies, Ralston filed a refund claim for those years and an amended refund claim for the 1978 tax year. When the IRS failed to act on these claims, Ralston filed suit in the district court. A jury found in favor of Ralston on both the accounting method and embezzlement issues, awarding Ralston a corresponding refund of taxes paid and interest assessed for taxable years 1978–81.[3] Finding that the government's litigation position was not substantially justified, the district court additionally awarded Ralston $48,907.50 in attorney's fees, $12,680.20 in expert witness fees, and $2,003.09 in costs pursuant to I.R.C. § 7430. The government appeals the judgment on the accounting method issue and the award of litigation costs under § 7430; it does not appeal the jury verdict on the embezzlement issue.

## I

■ The government contends that the district court erred in refusing to direct a verdict or grant judgment notwithstanding the verdict in its favor because the IRS Commissioner, as a matter of law, did not

abuse his discretion by requiring Ralston to switch from the cash to the accrual method of accounting for tax purposes. When reviewing a district court's denial of a motion for a directed verdict or judgment notwithstanding the verdict, "we may find error only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party." *Zimmerman v. First Federal Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988).

Under I.R.C. § 471, a taxpayer required to employ an inventory accounting system must account for its inventories "on such basis as the Secretary may prescribe as conforming [to industry accounting practices] and as most clearly reflecting the income." The regulations implementing this section explain that inventories must be used whenever "the production, purchase, or sale of merchandise is an income-producing factor." Treas.Reg. § 1.471–1. The regulations further explain that when inventories must be used, "the accrual method of accounting *must* be used with regard to purchases and sales...." *Id.* § 1.446–1(c)(2)(i) (emphasis added). The Commissioner, however, may permit the taxpayer "to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations ... *if, in the opinion of the Commissioner*, income is clearly reflected by the use of such method." *Id.* § 1.446–1(c)(2)(ii) (emphasis added).

Ralston has never disputed that inventories are an income producing factor in its business. Rather, Ralston convinced the jury that the Commissioner abused his discretion in determining that the cash method of accounting did not clearly reflect Ralston's income.

---

2. Ralston had asserted that it had discovered in 1979 that its bookkeeper had forged checks worth $550,869.36 on the company's corporate checking account. As a result, Ralston took deductions on its tax returns of $128,607 in 1979 and $422,263 in 1980.

3. The district court awarded Ralston a refund of $120,243 in taxes paid for 1978, $411,686 in taxes paid and $333,383 in assessed interest paid for 1980, and $276,363 in taxes paid and $185,756 in assessed interest paid for 1981. In addition, Ralston was awarded statutory interest on these sums.

The Commissioner is entitled to substantial deference in determining whether the accounting method used by a taxpayer with inventories clearly reflects income. *See Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532–33, 99 S.Ct. 773, 780–81, 58 L.Ed.2d 785 (1979). Although his discretion "is not unbridled and may not be arbitrary," *id.* at 533, 99 S.Ct. at 781, the Commissioner's decision should not be set aside unless clearly unlawful or plainly arbitrary. *Id.* at 532–33, 99 S.Ct. at 780–81. In light of this deference, a taxpayer arguing that the Commissioner has abused his discretion "must demonstrate substantial identity of results between his method and the method selected by the Commissioner." *Wilkinson–Beane, Inc. v. Commissioner*, 420 F.2d 352, 356 (1st Cir. 1970). *Accord Asphalt Products Co. v. Commissioner*, 796 F.2d 843, 849 (6th Cir. 1986), *rev'd on other grounds*, 482 U.S. 117, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987); *Fred H. McGrath & Son, Inc. v. United States*, 549 F.Supp. 491, 493–94 (S.D.N.Y. 1982); *Surtronics, Inc. v. Commissioner*, 50 T.C.M. (CCH) 99, 104 (1985). *See also Knight–Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 789 (11th Cir.1984)

("If the taxpayer must use inventories, the Commissioner may also require it to adopt the accrual method.").[4]

In the instant case, the cash and accrual methods of accounting do not achieve a substantial identity of results.[5] The accrual method increases Ralston's gross income by $715,515 (157%) for 1979, $467,284 (36%) for 1980, and $739,581 (48%) for 1981.[6] Ralston does not dispute these calculations. It nevertheless argues that when the evidence and all inferences are viewed in its favor, we must affirm the district court's refusal to take the case from the jury.

Ralston first points to the testimony of its president and its C.P.A. that the cash method of accounting clearly reflected its income for the years in question. Although both of these witnesses gave opinions that the cash method clearly reflected Ralston's income, neither contested the government's calculation of the substantial differences achieved under the cash and accrual methods for the years in question. Indeed, Ralston's own financial statements reflect that the cash and accrual methods reach substantially different results for the years in question.[7]

---

**4.** Applying this principle, courts have concluded that a taxpayer's method of accounting is "sustainable only if it achieves results that are virtually identical to the results that would be achieved under an accrual method." S. Gertzman, *Federal Tax Accounting* ¶ 2.02[2][f] at 2–31 (1988). *See, e.g., Wilkinson–Beane*, 420 F.2d at 356 (Commissioner did not abuse his discretion when "over a five year period the difference in totals was less than two-tenths of one percent").

**5.** The substantial difference between the results apparently is due in large part to retentions that delayed the inclusion of certain accounts receivable in income. Ralston's accountant explained: "As with most construction contracts there was always a retention clause in the contract that provided for the customer, the client to withold a certain percentage of each of the billings on that contract until the contract was completed to the satisfaction of the customer...." IV R. 21–22. Under the cash method employed by Ralston, these receivables were not recognized in income until they were received. In contrast, the accrual method would have matched these receivables with related expenses and included them in income when earned.

**6.** The record on appeal reflects some confusion regarding Ralston's reported gross income in 1979 and the exact increase in gross income in

1980 and 1981 caused by the change in accounting methods. In its brief on appeal, the government asserts that Ralston reported gross income of $454,228.99 in 1979, *see* Brief for the Appellant at 30, and that the change in accounting methods increased Ralston's gross income by $481,698 in 1980, and $611,533 in 1981, *see id.* at 6–7, 30. Ralston's brief does not challenge these numbers. Ralston's tax return for the year ending February 29, 1979, however, reports a gross income of $454,702.98, *see* Addendum to Brief for the Appellant, Vol. II at 78, and the jury instructions and trial testimony indicate that the change in accounting methods increased Ralston's gross income by $467,284 in 1980, and $739,581 in 1981, *see* Addendum to Brief for the Appellee at 63; III R. 112–13. Although these discrepancies make no difference in the outcome of this appeal, we use the latter numbers throughout this opinion.

**7.** Ralston's financial statements report deferred income taxes of $103,513.44 for 1979, $261,607.51 for 1980, and $445,822.50 for 1981. *See* Addendum to Brief for the Appellant, Vol. I at 57, 67, 75. The notes to the financial statements explain that "[d]eferred income taxes payable result from a timing difference in recognizing income as between the cash basis (used in filing

Ralston next contends that evidence produced at trial raises an inference that "the IRS had been motivated by some improper motive" in requiring the change in accounting methods. Brief for the Appellee at 14. Ralston had used the cash method of accounting to prepare its income tax returns since 1960. Several IRS audits approved this practice.[8] The IRS's initial 1979–81 audit once again approved Ralston's use of the cash method and determined that Ralston was due a $144,000 refund. Before the refund was paid, however, the IRS revised its audit and determined that the cash method did not clearly reflect income. As a result, Ralston received no refund and was assessed a substantial tax deficiency for the years in question. Ralston essentially argues that the Commissioner's sudden change of heart was not based on a decision that the cash method did not clearly reflect income, but on a desire to avoid making a $144,000 tax refund.

■ We do not agree that these facts require affirmance of the district court's refusal to take the case from the jury. Neither a taxpayer's consistent use of the cash method of accounting nor the Commissioner's prior acceptance of that method prevents the Commissioner from requiring a change for years in which the cash method does not clearly reflect income. *See Asphalt Products*, 796 F.2d at 848–49; *Knight–Ridder Newspapers*, 743 F.2d at 793 ("Greater experience with the actual effects of the method or a significant change in the nature of the taxpayer's business may convince the Commissioner that the consent given for earlier years is no longer appropriate."). The relevant inquiry is whether the Commissioner abused his discretion in determining that the cash method does not clearly reflect income.

In the instant case, the substantial difference in the results achieved under the cash and accrual methods amply supports the Commissioner's actions. In light of this difference, it is essentially irrelevant that

the Commissioner may have been driven by a desire to maximize tax revenues. As a practical matter, the Commissioner likely will determine that the cash method does not clearly reflect income only if, when compared to the accrual method, it understates taxable income. Thus, if we accepted Ralston's argument, every taxpayer forced to switch from the cash to the accrual method of accounting would have a winning argument that the Commissioner acted for an improper reason: recognition that the accrual method produced a larger taxable income for the period in question.

■ Ralston also points to the government's failure to raise the accounting method issue in its motion for summary judgment and its other pretrial pleadings. Although we agree that the government could and should have made its argument in its motion for summary judgment, its failure to do so neither demonstrates that the government's position is unjustified nor estops it from raising the issue in a directed verdict motion. After reviewing the record, we are satisfied that the government adequately raised the issue in its motion for directed verdict.

The instant case fulfills the First Circuit's prediction that "application of [the] rigorous [substantial identity of results] standard may occasionally work a harsh result...." *Wilkinson–Beane*, 420 F.2d at 356. Because of the deference afforded the Commissioner in making § 471 accounting method decisions, however, we must conclude that the substantial identity of results is a proper standard. It may seem inequitable to permit the Commissioner to *retroactively* apply the accrual method to a taxpayer like Ralston and thereby determine a substantial tax deficiency and impose the related interest assessment upon the taxpayer. But the courts have routinely allowed the Commissioner to take such action without any discussion of the retroactive aspect of the determination. *See, e.g., Asphalt Products*, 796 F.2d 843;

the corporation income tax returns) and the accrual basis used in this audit report." *Id.* at 66 n. 5.

8. In fact, during a previous audit, the IRS required Ralston to switch a note receivable from the accrual to the cash method of accounting. II R. 54; IV R. 28.

*Knight–Ridder Newspapers,* 743 F.2d 781; *Wilkinson–Beane,* 420 F.2d 352. As a practical matter, the Commissioner cannot determine whether a method of accounting clearly reflects income for a particular year until after the return has been filed and an audit performed. Moreover, the interest assessed against the taxpayer is not unjust given that the taxpayer has had the continuing use of the money it would have paid in taxes had it filed using the accrual method of tax reporting.

Because the uncontested evidence produced at trial demonstrates that the cash and accrual methods do not lead to a substantial identity of results for the years in question, we have no choice but to reverse the district court's refusal to take the accounting method issue from the jury.[9]

## II

■ The government next argues that the district court erred in awarding Ralston its litigation costs under I.R.C. § 7430. Under § 7430, the prevailing party in a court proceeding brought by or against the United States in connection with any tax matter may recover its reasonable litigation costs. To qualify as a "prevailing party," a taxpayer must demonstrate, *inter alia,* that it either "substantially prevailed with respect to the amount in controversy, or ... substantially prevailed with respect to the most significant issue or set of issues presented...." *Id.* § 7430(c)(4)(A)(ii).

In light of our decision in Part I, we conclude that Ralston is not a "prevailing party." Although Ralston prevailed on the embezzlement issue, that issue accounted for only $450,869.36 of the $2,373,249.36 at stake in this case.[10] A taxpayer who recovers only nineteen percent of the amount at issue in a tax case has not substantially prevailed with respect to the amount in controversy. We also view the accounting method issue as the most significant issue in this case. As the government states, "[t]he accounting method issue ... involves the lion's share of the amount in controversy, and, unlike the embezzlement loss issue, it can, in addition, affect future tax years." Brief for the Appellant at 38.[11]

In conclusion, the district court's refusal to take the accounting method issue from the jury and its award of litigation costs are hereby REVERSED. The case is therefore REMANDED for a recalculation of the proper refund of taxes and accrued interest due Ralston on the embezzlement issue.

9. Because we hold the court should have directed a verdict for the government, we need not address the government's challenge to the accounting method jury instructions offered by the district court.

10. This figure is comprised of the accounting method and embezzlement issues. The accounting method issue involved $1,922,380. *See supra* note 6 and accompanying text. Ralston initially attempted to deduct $550,869.36 in connection with the embezzlement loss. During the trial, however, the parties stipulated that a reasonable prospect of recovering approximately $100,000 of this amount existed as of February 29, 1980. *See* IV R. 64.

11. Because we conclude that Ralston did not substantially prevail with respect to the amount in controversy or the most significant issue in the case, we need not consider whether the government's position on the embezzlement issue was substantially justified. *See* I.R.C. § 7430(c)(4)(A)(i).