Elmer D. Willis and wife, Pearl Willis v. Commissioner. Charles Wesley Willis and wife, Edna M. Willis v. Commissioner. Charles Wesley Willis v. Commissioner.
Willis v. Commissioner
Docket Nos. 54624-54626.
United States Tax Court
T.C. Memo 1957-223; 1957 Tax Ct. Memo LEXIS 32; 16 T.C.M. (CCH) 1013; T.C.M. (RIA) 57223; November 29, 1957
*32 In 1944, 1946, and 1947, petitioners Elmer D. and Charles Wesley Willis operated a partnership in North Carolina which was primarily engaged in buying for and shipping seafood to dealers outside of North Carolina. The partnership also bought and sold clams for its own account. Petitioners kept no books and records except copies of shipping memoranda which reflected the quantity and price of seafood shipped. Respondent determined the petitioners' distributive shares of partnership income by using the total value of seafood shipments shown on the shipping memoranda as representing the amount of partnership sales, and attempted to determine purchases or cost of goods sold by using a percentage of such "sales" figure or by an analysis of partnership bank deposits and checks. He disregarded other more reliable evidence on which petitioners' income for such years could have been reconstructed. Held, respondent's determination of the distributive shares of partnership income was by a method which did not clearly reflect such income and cannot be sustained. Held, further, certain expenses claimed by Charles for 1946 and 1947 disallowed for lack of proof. Held, further, the deficiencies determined *33 for 1944 are barred by the statute of limitation since the respondent did not show that the petitioners omitted from gross income an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in their returns. Held, further, a part of the deficiencies in Charles's tax for 1946 and 1947 was due to negligence and intentional disregard of rules and regulations. Leon L. Rice, Jr., Esq., Box 199, Winston-Salem, N.C., C. W. Womble, Esq., and C. R. Wheatly, Jr., Esq., for the petitioners. James R. Harper, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the following contested income tax deficiencies: [1]
Docket
Defi-
No.
Petitioners
Year
ciency
54624
Elmer D. and Pearl
Willis
1944
$3,870.93
54625
Charles Wesley and Edna
M. Willis
1944
1,463.03
1946
3,325.68
54626
Charles Wesley Willis
1947
7,967.13
*34 The issues to be decided are: (1) The distributive shares of income from a partnership which petitioners Elmer D. Willis and Charles Wesley Willis owned during the years in issue; (2) whether petitioner Charles Wesley Willis was entitled to claim certain expense deductions in connection with his work as an engineer on a fishing boat; and (3) whether any part of the deficiencies was due to negligence or intentional disregard of rules and regulations, as the respondent alleged by amended answer. The deficiencies determined for the year 1944 are barred by the statute of limitation unless the petitioners omitted from gross income an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in their returns for such year. Some of the facts were stipulated. Findings of Fact The stipulated *35 facts are so found and are incorporated herein by this reference. Petitioners Elmer D. and Charles Wesley Willis are brothers. During the years in issue they, together with their wives, Pearl and Edna M. Willis, resided in Williston, North Carolina. Elmer D. and Pearl Willis filed a joint return for the year 1944; Charles Wesley and Edna M. Willis filed joint returns for 1944 and 1946; and Charles filed an individual return for 1947. All such returns were filed with the former collector of internal revenue for the district of North Carolina. During the years in issue and for some years prior thereto, Elmer and Charles were partners in a business known as Willis Brothers Seafood Company, located in Williston, North Carolina. Elmer devoted all of his time to the business, but Charles usually worked for as much as 10 months of the year as an engineer on a fishing boat. Elmer received 75 per cent of the partnership profits, and Charles received 25 per cent. The partnership bought and sold clams for its own account and, in addition, bought large quantities of other seafood for the account of dealers in Richmond, Virginia; Washington, D.C.; Baltimore, Maryland; Philadelphia, Pennsylvania; *36 and New York, New York. The most substantial part of the partnership business was acting as an agent or drummer for out-of-state firms and as a shipper of seafood to such firms. The partnership also shipped seafood for other dealers in the Williston area. It charged and received certain amounts as freight on such shipments and received some commissions on purchases for such out-of-state firms. A few groceries were sold on the business premises, but such sales accounted for only a negligible amount of partnership income. The partnership did not maintain books and records of its business dealings. It did retain copies of shipping tickets which reflected the quantity and price of merchandise shipped. Such tickets did not show whether the shipments were for the partnership's own account or were of merchandise purchased for out-of-state dealers. Sometimes the amount of freight which petitioner charged on shipments was shown separately on the shipping tickets and sometimes it was not. The partnership maintained a bank account. Often, in depositing checks received for the purchase of or in payment of merchandise, substantial sums would be withdrawn in cash which would be used in purchasing *37 seafood. Both Elmer and Charles owned Chevrolet automobiles during the years in issue which they purchased on "time payments." The purchase of all trucks owned by the partnership were similarly financed. In August 1947, it was necessary for the partnership to refinance a truck and trailer in order to pay the cost of insuring the vehicle. At the end of each of the years here in issue, there was an outstanding balance due on the purchase price of the partnership trucks. The partnership was constantly in debt to the local bank. It also had a current outstanding account owing to a local gasoline dealer from whom it purchased fuel for its trucks of anywhere from $1,000 to $1,800 during the years in issue. The partnership's geographic location necessitated its buying seafood through dealers rather than directly from the fishermen, which reduced the possible margin of profit on seafood bought for its own account. Buying and shipping clams was not regarded as a profitable business in the area, and petitioners were the only persons who consistently carried on such business. Charles loaned the partnership $1,200 in 1946 which had not been repaid by the end of 1947. Petitioner Pearl Willis *38 was the postmistress at Williston during the years in issue and received a maximum salary of $525 a year. She did all of her own housework, made all of her own clothes, and part of her children's clothes. She had no domestic help. Petitioner Edna M. Willis was a teacher in the public schools until sometime in 1946 or 1947, when she and Charles adopted a child. Her maximum salary as a teacher was approximately $1,500 a year. Both families lived modestly and did little entertaining. The value of both families' homes and all business real estate was appraised at $12,000 by a bank for loan purposes in 1947. The petitioners filed partnership returns for the years in issue and for prior years. Such returns, however, were only Elmer's best estimate of what the income of the partnership for the year had been. He had no books and records. The return for 1944 was prepared by a person who was formerly an employee of the Internal Revenue Bureau, and for 1946 and 1947 by such person's niece. An inexperienced person attempted to keep books for the partnership for most of 1946, but at the end of the year such books showed a loss which was disregarded in preparing the returns for that year since *39 Elmer thought that the business must have earned some income. Elmer never took any records or written information to the persons who prepared the returns but just guessed at the figures which were used. The same former employee of the Internal Revenue Bureau prepared returns for a great many persons in the Williston area who kept either inadequate books or none at all, and he always used a figure of 60 per cent of sales as representing the amount of purchases, regardless of the type of business. In determining the deficiencies in issue, the respondent took the total amount of the shipping memoranda for each of such years and decided that such totals represented the amount of partnership sales. For 1944, he used 60 per cent of such supposed sales figure as the amount of purchases, since petitioners had used the same percentage figure in determining the amount of purchases shown on the partnership return. In 1946 and 1947, respondent determined purchases from canceled checks and amounts of cash withdrawn at the time deposits were made in the partnership bank account. He did ont allow some checks which he could not definitely identify as a purchase and he did not allow for customers' *40 checks which were cashed and used for purchasing merchandise. Set forth below are the amounts of net income reported on the partnership and individual returns of the petitioners; the amounts of partnership and individual net income which the respondent determined; and the net income shown on petitioners' net worth statements: Deter-
As Per
Reported
mined
Petitioners'
on
by
Net Worth
Year
Returns
Respondent
Statements
Partnership
1944
$3,058.35
$19,220.09
[2,454.77)
1946
2,499.26
41,568.34
(6,122.11)
1947
2,413.77
86,418.61
3,763.77
Elmer and Pearl
1944
2,027.76
14,415.07
924.73
Charles and Edna
1944
6,856.78
11,274.30
3,395.30
1946
5,914.57
16,401.07
1,249.99
Charles
1947
1,466.79
23,117.99
1,923.12
On his return for 1947, Charles claimed expenses of $620 allegedly incurred in connection with his work as an engineer on a fishing boat as deductions from his adjusted gross income to arrive at the amount of his net income. In determining the deficiencies, the respondent disallowed the alleged expense deduction of $620 for 1947, and also disallowed similar deductions of $480 and $605.75 which Charles had claimed *41 on his returns for 1944 and 1946, respectively. The petitioners cooperated fully with the respondent's agents during the course of their investigation. Petitioners did not omit from gross income an amount properly includible therein which was in excess of 25 per cent of the amount of gross income stated in their returns for 1944. A part of the deficiencies determined against Charles for the years 1946 and 1947 was due to negligence and intentional disregard of rules and regulations. Opinion RICE, Judge: Section 54 of the Code, and the Commissioner's regulations issued pursuant thereto, require every taxpayer to keep permanent books and records which are sufficient to establish the amount of his gross income and any deductions and credits to which he is entitled. The petitioners here kept no such books and records, and simply guessed at the amount of income which they thought they had earned from the partnership. Because of their disregard of the requirements which the law imposed upon them, they were grossly negligent in reporting their income during the years in issue. Obviously, in the face of such negligence and the absence of any business books and records, other than *42 the shipping memoranda, the respondent was justified in determining the petitioners' income "in accordance with such method as in * * * [his] opinion * * * [did] clearly reflect the income." The principal point of controversy in this case is the amount of partnership income. Elmer devoted all of his time to the business and it was his and Pearl's principal source of income; and, aside from the wages which Charles and Edna received, it was their only other source of income. The respondent's determination of the two brothers' respective shares of partnership income was the major item in the deficiencies which he determined. But, despite our appreciation of the difficult burden which these petitioners placed upon the respondent by their negligence, we nevertheless think that he also erred in the method by which he determined the respective shares of partnership income and the resulting deficiencies in the petitioners' individual incomes. The wide discretion given to the respondent by section 41, to determine the correct amount of tax owed by a taxpayer who does not keep adequate books and records, has never presupposed the privilege of disregarding the best available evidence *43 and a more accurate method of determining the amount of income, in preference for other evidence and some other method which will result in the largest possible amount of tax. On the basis of the whole record before us here, we think the method by which the respondent determined the petitioners' income did not clearly reflect such income. We think there was other available evidence on which a determination could have been based which would have more nearly approximated the amounts of income which we believe these petitioners actually received. At the hearing, both Elmer and Charles testified, as did Elmer's wife, Pearl. They also called as witnesses a number of residents of the community who were intimately acquainted with them, and with whom they had done business over a period of many years, including those in issue. We are satisfied from all of the testimony, together with other evidence, that the petitioners lived modestly and that they did not receive any such large amounts of income as the respondent's determination would indicate. We believe that petitioners were only conduits for the large amounts of money reflected on the shipping tickets and the corresponding sums which *44 passed through their bank account, and that their earnings from purchasing for and shipping to others, as well as the amount of profits realized from their own clam business, were modest. We are therefore satisfied that the amounts shown on the shipping memoranda did not represent partnership sales. So also, the respondent's determination of purchases or cost of goods sold, by using 60 per cent of the amount of the shipping memoranda, cannot be justified simply because the petitioners used 60 per cent of the amount of the sales shown on their returns as representing cost of goods sold. Such percentage figure had no relation to the actual business of these petitioners nor to any similar business. It was simply an imaginary amount selected and used by the person who prepared the returns for the petitioners. In addition to the testimony of the various witnesses, the petitioners offered net worth statements which their accountant had prepared with the help of a local attorney who had searched all available public records for any assets owned by them. The statements covered the entire period from 1942 to 1947, inclusive, for which the respondent had originally determined deficiencies. *45 Although some evidence indicates that more income was received in some of the years than the net worth statements show, they appear to us to have been prepared with considerable care. With respect to Elmer and Pearl, the net worth statement shows net income of $924.73 in 1944; they reported net income of $2,027.76; the respondent determined they received $14,415.07. In 1944 and 1946, the statement shows that Charles and Edna had income of $3,395.30 and $1,249.99, respectively; they reported $6,856.78 and $5,914.57 in those years; the respondent determined they received $11,274.30 and $16,401.07, respectively. In 1947, however, the net worth statement shows that Charles received net income of $1,923.12, but he reported net income of only $1,466.79. The respondent determined he received $23,117.99. Since the petitioners asked that we find they received income in the amount shown in the net worth statements, we have taken such request with respect to Charles' income for 1947 as an admission against interest, and accordingly hold that he had net income in that year of not less than $1,923.12, plus an additional adjustment hereafter set forth. In 1944 and 1946, the amounts shown by Charles' *46 net worth statement cannot be correct since they are far less than the amounts actually reported during those years, which amounts were actually received since the principal source of his and Edna's reported income was from wages, and the withholding statements are attached to the returns. They make no claim that any losses occurred during those years which were not claimed on the returns. The accountant who prepared the net worth statements has kept petitioners' books and prepared their returns since that period. He testified, and we believe him, that he had never seen any evidence in later years indicating that the petitioners had received any substantial amounts of income from 1942 to 1947, inclusive, in excess of the amounts reflected in those statements or for which they had not accounted. He further testified that the net worth method was the only possible way by which any reasonable reconstruction of the petitioners' income could have been made. We agree with that statement subject to the qualification, which is always inherent in a net worth computation, that it is subject to individual items of adjustment clearly shown by other evidence in the record. The net worth computation *47 was submitted to respondent's agents many years prior to the hearing, and most items in such computation for the partnership were stipulated by the parties. Along with such statements, the respondent was also given a full explanation of the method of the petitioners' operation of their partnership. This is not a case where the taxpayers lived on the fringe of society and derived their income from some illegal activity. From all that appears, the petitioners were upright, respected citizens of their community, albeit ones who were grossly negligent in dealing with the tax collector. Cf. Anthony Delsanter, 28 T.C. , filed July 18, 1957. Nor is it one where even though the taxpayers had few assets at the end of the period in question, other evidence showed the receipt of substantial amounts of income which were spent for some purposes other than for the acquisition of assets. , affd. (C.A. 2, 1943), certiorari denied . So also, this is not a case where either the method of reconstructing income used by the taxpayers or that used by the respondent might equally *48 well show the income received during the years in question. See Emilie Furnish Funk, 29 T.C. , filed November 20, 1957. We think on the basis of all the evidence available to him that the respondent selected a method for determining the distributive shares of partnership income which obviously was not based upon the best evidence available, and that such method was not one which clearly reflected the petitioners' income. We therefore cannot sustain his determination of deficiencies insofar as they relate to the distributive shares of partnership income. The only adjustment which the respondent made to Charles's and Edna's income for 1946 was to increase Charles's distributive share of partnership income and to disallow certain expenses which he claimed were incurred in connection with his activities as engineer on a fishing boat. Since we do not uphold the respondent's determination with respect to the distributive share of partnership income, the only deficiency for 1946 will result from the disallowance of the claimed expenses as hereinafter set forth. Because of his admission against interest, we have held that Charles's income for 1947 was more than he reported, and there will, *49 accordingly, be a deficiency in his tax for that year based on the amount of such understatement, plus the following additional adjustment. Charles offered no evidence with respect to the expenses claimed on his returns for each of the years in issue in connection with his activities as an engineer on a fishing boat, which expenses the respondent disallowed in determining the deficiencies. We therefore uphold the deficiencies in his tax insofar as they relate to the disallowance of such expenses and the net income shown on the return for 1946 and that shown on the net worth statement for 1947 are increased by the amount of such expenses. In order to assess and collect deficiencies for the year 1944, the respondent had the burden of showing that the petitioners omitted from the amount of gross income stated in their returns, an amount in excess of 25 per cent thereof. We are unable, from this record, to make a precise finding of the amount of income petitioners had in 1944 but they reported approximately twice as much as the amount of income shown on their net worth statements for such year and we think, from all the evidence, that the amounts shown in the returns more nearly approximate *50 the correct amounts of their income than that determined by the respondent. We therefore hold that he failed to carry his burden of proof and any deficiencies determined against Elmer and Charles and their wives for the year 1944 are therefore barred by the statute of limitation. Because of the petitioners' disregard of the minimum record-keeping requirements demanded of every taxpayer, there can be no argument but that any deficiencies were due in part to their negligence and intentional disregard of rules and regulations. Since there will be a deficiency in Charles's tax for 1946 and 1947, the respondent's plea for the imposition of the addition to tax for negligence, provided by section 293(a), is granted; but, since 1944 is closed by the statute of limitation, no addition to tax for that year is applicable. Decisions will be entered under Rule 50. Footnotes
1. The respondent originally determined deficiencies for other years and additions to tax under section 293(b) for those years and the ones still in issue. After the hearing, he conceded that he erred in determining additions to tax under 293(b), and the years other than the ones remaining in issue are, therefore, barred by the statute of limitation.↩