T.C. Memo. 1998-184


UNITED STATES TAX COURT


GOLDEN GATE LITHO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6569-95.                    Filed May 18, 1998.


<u>Jon R. Vaught</u>, for petitioner.

<u>Elaine L. Sierra</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, <u>Judge</u>:  Respondent determined a deficiency of
$133,906 in petitioner's Federal income tax and an accuracy-
related penalty under section 6662(a) of $26,781 for the taxable
year ending May 31, 1991.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions[1] by the parties, the issues to be decided are:

(1)  Whether petitioner is required to change from the cash method of accounting to the accrual method of accounting;

(2)  if petitioner is required to change to the accrual method of accounting, to what extent, if any, adjustments were properly made under section 481; and

(3) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

### FINDINGS OF FACT

Petitioner is a California corporation organized in 1980. At the time of filing the petition in this case, petitioner's principal place of business was in Oakland, California. Petitioner is owned 76 percent by its president, Clifford Asher (Mr. Asher), and 24 percent by Mr. Asher's son, Donald Asher.

Petitioner is in the lithography or commercial printing business. The business was established by a prior owner in 1937. In 1973, Mr. Asher purchased the business from the prior owner. In 1980, Mr. Asher incorporated the business and changed its name to Golden Gate Litho.

---

[1]  Respondent concedes that petitioner is entitled to deduct commission expenses in the amount of $21,888. Petitioner concedes that it is not entitled to deduct a loss of $6,215 on the sale of an automobile.

Petitioner prints calendars, napkins, greeting cards, and forms according to the specifications of its customers. Petitioner orders the types of paper and supplies needed for print jobs after receiving job orders. Petitioner does not maintain a stock of paper or other materials because each job requires paper of a different weight and finish. Usually when a job is completed, any materials left over are scraps and are not used for other jobs.[2]

On average, it takes 2 to 3 weeks from the time an order is placed to complete the job and ship the order to the customer. Petitioner holds title to (and bears the risk of loss of) the supplies and printed goods until the final goods are shipped to its customers. After the goods are shipped, the client is billed for the order. Petitioner usually receives payment for an order within 45 days of shipment.

A large portion of petitioner's work is done for one customer, Suzy's Zoo Greeting Cards. For the taxable year ending May 31, 1991, Suzy's Zoo Greeting Cards accounted for approximately 70 percent of petitioner's accounts receivable at the start of the taxable year and approximately 80 percent of the accounts receivable at the end of the taxable year.

---

[2] Petitioner usually donates the scraps to a school or makes scratch pads out of the them.

Petitioner has used the cash receipts and disbursements method of accounting (cash method) for tax purposes since its incorporation. Petitioner reports sales at the time it receives payment. Petitioner deducts the cost of materials and supplies for each printing job in the year of purchase and deducts all expenses in the year paid. Petitioner did not report any beginning or ending inventory on its tax returns and did not use inventory accounting for either tax or financial accounting purposes for the year at issue or the immediately preceding tax year. Since its incorporation, petitioner has reported no opening or closing inventories on its tax returns.

Petitioner reported its income under the cash method for the taxable years ending May 31, 1989 through 1995, as follows:

| | | | | Taxable Year Ending | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | 5/31/89 | 5/31/90 | 5/31/91 | 5/31/92 | 5/31/93 | 5/31/94 | 5/31/95 |
| Gross receipts | $1,450,643 | $1,462,904 | $1,678,433 | $1,499,946 | $1,399,727 | $1,357,166 | $1,135,232 |
| Cost of goods sold | 939,217 | 890,986 | 1,026,832 | 900,459 | 834,879 | 94,623 | 759,113 |
| Gross profit | 511,426 | 571,918 | 651,601 | 599,487 | 564,848 | 462,543 | 376,119 |
| Total deductions | 468,360 | 585,688 | 615,220 | 562,412 | 541,842 | 531,526 | 480,820 |
| Net income[1] | 43,066 | (13,770) | 36,381 | 37,075 | 23,006 | (68,983) | (104,701) |
| Other income[2] | 8,821 | 18,238 | 16,683 | 17,147 | 21,083 | 15,346 | 12,797 |
| Special deductions | -0- | 670 | 3,064 | 4,222 | 6,293 | 6,007 | 6,117 |
| Taxable income | 51,887 | 3,798 | 50,000 | 50,000 | 37,796 | (59,644) | (98,021) |
| | | | | | | | |
| Schedule A (cost of goods sold): | | | | | | | |
| Inventory beginning year | -0- | -0- | -0- | -0- | -0- | -0- | -0- |
| Purchases | 546,827 | 483,172 | 577,861 | 449,492 | 380,327 | 420,730 | 282,490 |
| Labor | 335,783 | 375,021 | 395,210 | 377,987 | 382,311 | 396,928 | 324,124 |
| Union benefits | 30,004 | 25,460 | 28,153 | 32,383 | 37,010 | 35,969 | 29,624 |
| Misc. O/S services | -0- | -0- | 18,468 | 30,995 | 29,594 | 33,595 | 116,410 |
| Sales Tax | 20,543 | -0- | -0- | -0- | -0- | -0- | -0- |
| Freight | 6,060 | 7,333 | 7,140 | 9,602 | 5,637 | 7,401 | 6,465 |
| Inventory end year | -0- | -0- | -0- | -0- | -0- | -0- | -0- |
| Total | 939,217 | 890,986 | 1,026,832 | 900,459 | 834,879 | 894,623 | 759,113 |
| | | | | | | | |
| Schedule E (compensation of officers): | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C. F. Asher | 156,250 | 205,000 | 228,000 | 182,500 | 165,000 | 165,000 | 135,000 |
| D. Asher wage in C.O.G.S. | -0- | 106,545 | 138,978 | 134,620 | 132,295 | 143,741 | 101,015 |

[1] Taxable income excluding other income and before NOL and special deductions.
[2] Dividends, interest, gross rents and royalties, capital gain, and other income.

Mr. Asher and petitioner's bookkeeper used a commercial bookkeeping program to prepare balance sheets that included estimates of petitioner's end-of-year accounts receivable, accounts payable, salaries and wages payable, and work in process. The bookkeeper determined the amount of accounts payable by totaling bills that were due. The bookkeeper also determined the amount of accounts receivable by compiling amounts reflected on customer account cards. Mr. Asher estimated the amount reflected on the balance sheet as work in process. Mr. Asher's estimates of work in process were based on the market value that included the expected profit from the work. The balance sheets for the fiscal years ending May 31, 1989 through 1995, reflect the following amounts:[3]

| | Taxable Year Ending | | | | | | |
|---|---|---|---|---|---|---|---|
| Item | 5/31/89 | 5/31/90 | 5/31/91 | 5/31/92 | 5/31/93 | 5/31/94 | 5/31/95 |
| Accounts receivable | $176,580 | $250,378 | $196,378 | $142,673 | $221,248 | $210,471 | $212,379 |
| Accounts payable | 35,999 | 86,334 | 23,711 | 44,198 | 64,206 | 42,278 | 45,087 |
| Salaries and wages payable | 16,250 | 12,250 | 13,250 | 13,250 | 14,250 | 15,250 | 16,250 |
| Pension plan accrual | -0- | 52,260 | 56,000 | -0- | -0- | 20,000 | 73,597 |
| Work in process | 120,000 | 150,000 | 161,000 | 120,000 | 145,000 | 80,000 | 139,000 |

No later than July 1993, an agent of the Internal Revenue Service (IRS) began an audit of petitioner's returns for the

---

[3] Amounts are rounded to the nearest dollar.

taxable years ending May 31, 1991 and 1992.  The agent has a bachelor of science and a master's in business administration in accounting.  The audit was extensive and lasted longer than 12 months.  Petitioner provided the agent with all its books and records.  Although petitioner had previously been audited and had not been required to change from the cash method of accounting, the agent determined that petitioner was required to account for inventories and use the accrual method of accounting.

During the examination of petitioner's returns, petitioner provided the following breakdown of the work in process as of June 1, 1991:

| | |
|---|---|
| Paper | $55,000 |
| W.I.P. camera | 5,000 |
| W.I.P. press | 30,000 |
| W.I.P. bindery | 16,000 |
| Jobs completed and shipped | 38,000 |
| Jobs ready to bill | 13,500 |
| Jobs at outside service | 3,500 |
| Total | 161,000 |

Adjustments to Taxable Year Ending May 31, 1991

In the notice of deficiency, respondent determined that petitioner was required to maintain inventories and use the accrual method of accounting with respect to purchases and sales of inventory items.  Respondent increased petitioner's income for the taxable year ending May 31, 1991, by $36,002 ($11,000 +

$78,464 - $53,462) to account for the change to the accrual method as follows:

(1) Respondent reduced petitioner's gross receipts or sales by $53,462 computed as follows:

| | |
|---|---|
| Accounts receivable at close of year, less | [1]$196,916 |
| Accounts receivable at beginning of year | (250,378) |
| Adjustment to gross receipts or sales | (53,462) |

[1]Respondent used the amount of accounts receivable provided during the examination of petitioner's return rather than the amount reflected on petitioner's balance sheet for the fiscal year ending May 31, 1990.

(2) Respondent increased petitioner's income by $11,000 to reflect an $11,000 reduction of petitioner's cost of goods sold[4] to account for inventories as follows:

| | |
|---|---|
| Work in process at beginning of year, less | $150,000 |
| Work in process at end of year | (161,000) |
| Reduction in cost of goods sold | (11,000) |

(3) Respondent increased petitioner's income by $78,464 to reflect a $78,464 reduction of petitioner's cost of goods sold to account for purchases on the accrual method as follows:

| | |
|---|---|
| Accounts payable at close of year, less | [1]$20,120 |
| Accounts payable at beginning of year | [2](98,584) |
| Reduction in cost of goods sold | (78,464) |

[1] This amount is the portion of the accounts payable at the close of the taxable year that is related to cost of goods sold. It does not include $5,111 in accounts payable related to operating expenses and $11,250 in salaries and wages payable to Mr. Asher.

[2] This amount includes all accounts payable ($86,334), plus all salaries and wages payable ($12,250) at the beginning of the

---

[4] The notice of deficiency identifies the $11,000 increase as an adjustment to "work in process".

taxable year. It includes payables related to operating expenses as well as those related to cost of goods sold.

Respondent determined that adjustments were required by section 481(a) and adjusted petitioner's taxable year ending May 31, 1991, as follows:

(1) Respondent increased petitioner's income by $250,378 for the amount of accounts receivable reflected on its balance sheet for fiscal year ending May 31, 1990;

(2) respondent increased petitioner's income by $150,000 for the value of work in process reflected on its balance sheet for fiscal year ending May 31, 1990; and

(3) respondent decreased petitioner's income by $98,584 for the amount of accounts payable and wages and salaries payable reflected on its balance sheet for fiscal year ending May 31, 1990.

Respondent made the entire section 481 adjustment to the year of the change (taxable year ending May 31, 1991) and did not consider the application of section 481(b). Respondent also disallowed $21,888 in commission expenses and $6,215 that petitioner claimed as the loss on the sale of an automobile.

As a result of the adjustments, respondent determined that petitioner's taxable income for the taxable year ending May 31, 1991, was $415,899 rather than $50,000 as reported on the return.

Adjustments to Taxable Year Ending May 31, 1992

In the notice of deficiency, respondent also adjusted petitioner's taxable income for the taxable year ending May 31, 1992. Respondent reduced petitioner's income by $113,875 because of the change in accounting method. Specifically, respondent decreased petitioner's income by $54,243 to reflect a reduction in gross receipts, decreased petitioner's income by $41,000 to reflect the reduction in the amount of petitioner's work in process, and decreased petitioner's income to reflect an $18,632 increase in the cost of goods sold. Respondent also disallowed a repair expense of $23,624 and reduced petitioner's depreciation deduction by $2,411. As a result of the adjustments, respondent determined that petitioner had a $37,636 net operating loss for the taxable year ending May 31, 1992, rather than $50,000 of taxable income as reported on the return.

OPINION

I

Whether Petitioner Is Required To Change From The Cash Method of Accounting to The Accrual Method of Accounting

Section 446(a) requires a taxpayer to compute his taxable income under the same method of accounting by which he regularly computes his income in keeping his books. Section 446(b), however, provides that "if the method used [by the taxpayer] does not clearly reflect income, the computation of taxable

income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income."

In general, a method of accounting clearly reflects income when it accurately reports taxable income under a recognized method of accounting.  Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354 (1st Cir. 1970), affg. T.C. Memo. 1969-70; RLC Indus. Co. v. Commissioner, 98 T.C. 457, 490 (1992), affd. 58 F.3d 413 (9th Cir. 1995); Rotolo v. Commissioner, 88 T.C. 1500, 1513 (1987).  Both the cash method and the accrual method are permissible methods of accounting.  Sec. 446(c)(1) and (2).

Additionally, section 471(a) provides:

> SEC. 471(a).  General Rule.-- Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

By regulation, the Secretary has determined that inventories are necessary if the production, purchase, or sale of merchandise is an income-producing factor.  Sec. 1.471-1, Income Tax Regs.  The regulations provide that, unless otherwise authorized by the Commissioner, a taxpayer who is required to account for inventories must use the accrual method of accounting with regard to purchases and sales.  Sec. 1.446-1(c)(2)(i), Income Tax Regs.

A.   Whether Petitioner Is Required To Maintain Inventories

Petitioner prints calendars, napkins, greeting cards, and forms according to the specifications of its customers. Petitioner does not maintain a stock of paper or other materials because each job requires paper of a different weight and finish. Petitioner orders the types of paper and supplies needed for a job after the customer's order is placed. Usually when a job is completed, any materials left over are scraps and are not used for other jobs.

Respondent asserts that petitioner's production, purchase, and sale of merchandise is an income-producing factor, and therefore petitioner must account for inventories. Petitioner argues that it provides a service, and the printed items it sells to its customers and the materials it uses are not merchandise. Petitioner argues, therefore, it is not required to maintain inventories.

Although not specifically defined in the Internal Revenue Code or regulations, courts have found that the term "merchandise", as used in section 1.471-1, Income Tax Regs., is defined as an item held for sale. Wilkinson-Beane, Inc. v. Commissioner, supra at 354-355; Tebarco Mechanical Corp. v. Commissioner, T.C. Memo. 1997-311; Galedrige Constr., Inc. v. Commissioner, T.C. Memo. 1997-240; Honeywell Inc. & Subs. v.

<u>Commissioner</u>, T.C. Memo. 1992-453, affd. without published opinion 27 F.3d 571 (8th Cir. 1994).

Petitioner sells items that it prints according to the specifications of its customers. The printed items are items held for sale and, thus, are merchandise. All of petitioner's gross receipts are generated by the sale of the items petitioner produces for its customers. Therefore, the production and sale of merchandise is an income-producing factor.

Furthermore, even if we agreed that petitioner performs a service, courts have held that, if the cost of materials a taxpayer uses to provide a service is substantial compared to its receipts, the material is a substantial income-producing factor. <u>Wilkinson-Beane, Inc. v. Commissioner</u>, <u>supra</u> at 355. Petitioner reported the following gross receipts and purchases for the taxable years ending May 31, 1989 through 1995:

|  | Taxable Year Ending | | | | | | |
|  | 5/31/89 | 5/31/90 | 5/31/91 | 5/31/92 | 5/31/93 | 5/31/94 | 5/31/95 |
| Gross receipts | $1,450,643 | $1,462,904 | $1,678,433 | $1,499,946 | $1,399,727 | $1,357,166 | $1,135,232 |
| Purchases | $546,827 | $483,172 | $577,861 | $449,492 | $380,327 | $420,730 | $282,490 |
| Percentage | 38% | 33% | 34% | 30% | 27% | 31% | 25% |

The cost of materials petitioner uses to provide its service is substantial compared to its receipts. Therefore, the material petitioner uses is a substantial income-producing factor. Petitioner's arguments have previously been considered and rejected by this Court. See <u>Thompson Elec., Inc. v. Commissioner</u>, T.C. Memo. 1995-292; <u>J.P. Sheahan Associates,</u>

Inc. v. Commissioner, T.C. Memo. 1992-239; Akers v. Commissioner, T.C. Memo. 1984-208, affd. on this issue sub nom. Asphalt Prods. Co. v. Commissioner, 796 F.2d 843 (6th Cir. 1986), revd. on another issue 482 U.S. 117 (1987). We find that petitioner's sale of merchandise is an income-producing factor and, therefore, petitioner is required to maintain inventories.

B. **Whether It Was an Abuse of Respondent's Discretion To Change Petitioner From the Cash Method to Respondent's Method of Accounting**

The regulations provide that, unless otherwise authorized by the Commissioner, a taxpayer who is required to account for inventories must use the accrual method of accounting with regard to purchases and sales. Sec. 1.446-1(c)(2)(i), Income Tax Regs. Respondent argues that petitioner must account for inventories and must use the accrual method of accounting. In this case, however, the facts show that respondent completely disregarded the applicable provisions of the Internal Revenue Code and regulations and made no attempt to properly value petitioner's inventory or compute petitioner's income using a proper accrual method of accounting.

1. **Respondent's Method of Valuing Petitioner's Inventory Was Improper**

Rules governing the valuation of inventories are set forth in regulations promulgated under section 471 and the uniform

capitalization rules of section 263A. See secs. 1.471-1, 1.471-2, 1.471-3, 1.471-5, Income Tax Regs.; sec. 1.263A-1T, Temporary Income Tax Regs., 52 Fed. Reg. 10060 (Mar. 30, 1987). Respondent failed to comply with the rules for identifying items properly included in inventory and for properly valuing inventory items.

### a. Items Included in Inventory

Respondent increased petitioner's income for the taxable year ending May 31, 1991, by $11,000 to reflect a reduction of petitioner's cost of goods sold to account for inventories based on the increase in the value of work in process at the end of the year ($161,000) over the value at the beginning of the year ($150,000). In making the computation respondent used the value of the work in process as reflected on petitioner's balance sheets. During the examination of petitioner's return for the taxable year at issue, petitioner provided the following breakdown of the work in process as of June 1, 1991:

| | |
|---|---|
| Paper | $55,000 |
| W.I.P. camera | 5,000 |
| W.I.P. press | 30,000 |
| W.I.P. bindery | 16,000 |
| Jobs completed and shipped | 38,000 |
| Jobs ready to bill | 13,500 |
| Jobs at outside service | 3,500 |
| Total | 161,000 |

Section 1.471-1, Income Tax Regs., provides in part:

Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract * * *, but should exclude from inventory goods sold * * * title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected. * * *

Petitioner holds title to goods until they are shipped to the purchaser and bills the customer after the order is shipped. Therefore, petitioner does not hold title to work in process for jobs completed and shipped and work in process for jobs ready to bill. Under the regulations, such goods are not properly included in valuing petitioner's inventory, and it was improper for respondent to do so.

b. Respondent's Use of Estimated Market Value

"The bases of valuation most commonly used by business concerns and which meet the requirements of section 471 are (1) cost and (2) cost or market, whichever is lower." Sec. 1.471-2(c), Income Tax Regs. Section 1.471-4(c), Income Tax Regs., provides:

Where the inventory is valued upon the basis of cost or market, whichever is lower, the market value of each article on hand at the inventory date shall be compared with the cost of the article, and the lower

of such values shall be taken as the inventory value of the article.

Section 1.471-3, Income Tax Regs., defines "cost" as follows:

（a) In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods.

*   *   *   *   *   *   *

（c) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, (1) the cost of raw materials and supplies entering into or consumed in connection with the product, (2) expenditures for direct labor, and (3) indirect production costs incident to and necessary for the production of the particular article, including in such indirect production costs an appropriate portion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit.  See section 1.263A-1T for more specific rules regarding the treatment of production costs. * * *

The uniform capitalization rules of section 263A apply to real or tangible property produced by the taxpayer.[5]  Sec. 263A(b)(1).  Section 263A(a) provides that inventory costs include the direct costs of such property and such property's proper share of those indirect costs part or all of which are allocable to such property.  Section 1.263A-1T, Temporary

---

[5]  Sec. 263A also applies to real or personal property described in sec. 1221(1) which is acquired by the taxpayer for resale except for taxpayers who have annual gross receipts of $10 million or less.  Sec. 263A(b)(2).  There is no exception provided for producers who have annual gross receipts of $10 million or less.

Income Tax Regs., supra, provides complex rules for allocating indirect costs to inventory.

In valuing petitioner's inventory, respondent used the value of petitioner's work in process as reflected on petitioner's balance sheets. The value reflected on the balance sheets was based on Mr. Asher's estimate of the market value of work in process and included the expected profit from the work.

The regulations permit the use of market value only when that value is less than cost. Therefore, respondent's use of the value of work in process as reflected on petitioner's balance sheets is improper. Additionally, the regulations require a comparison of the market value of each article on hand at the inventory date with the cost of the article. Respondent made no attempt to properly identify inventory items or the direct costs of such items or to properly allocate indirect costs associated with such items under the uniform capitalization rules of section 263A.

We find that respondent's method of valuing petitioner's work in process was arbitrary and without sound basis in fact or law.

2. Respondent's Method Is Not a Proper Accrual Method

a. Accounts Receivable

Respondent reduced petitioner's gross receipts by $53,462 to account for accounts receivable. Respondent excluded from

gross receipts $250,378 attributable to accounts receivable at the beginning of the year and included $196,916 attributable to accounts receivable at the close of the year. The amount of receivables, however, was determined by compiling amounts reflected on customer account cards.

Accrual method taxpayers recognize income when "all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Sec. 1.446-1(c)(1)(ii), Income Tax Regs. Generally, under the "all events" test, accrual method taxpayers recognize income when it is paid, due, or earned, whichever occurs first. See, e.g., Schlude v. Commissioner, 372 U.S. 128, 133 n.6 (1963).

As discussed above, the breakdown of the work in process at the end of the year included amounts that had been earned, even though not billed to the client. Those amounts were accounts receivable at the close of the taxable year. Consequently, gross receipts should have been increased by those amounts. Similarly, any portion of the work in process at the beginning of the year representing completed work that had been shipped by the close of the previous tax year properly was a receivable attributable to the prior taxable year. Consequently, gross receipts should have been reduced by that amount.

b.   Adjustment for Accounts Payable

Under an accrual method of accounting, a liability is incurred and taken into account in the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.  Sec. 1.461-1(a)(2), Income Tax Regs. Thus, for purposes of accrual method accounting and ascertaining true income for a given accounting period, an expense must be deducted in the taxable year in which all the events have occurred which determine the fact of the liability and fix the amount of the liability, even though the liability is not due and payable until a later year.  Aluminum Castings Co. v. Routzahn, 282 U.S. 92 (1930); United States v. Anderson, 269 U.S. 422 (1926).

Respondent increased petitioner's income by $78,464 to reflect a reduction of petitioner's cost of goods sold to account for purchases on the accrual method as follows:

| | |
|---|---:|
| Accounts payable at close of year, less | $20,120 |
| Accounts payable at beginning of year | (98,584) |
| Reduction in cost of goods sold | (78,464) |

The adjustment for accounts payable was based on the accounts payable reflected on petitioner's balance sheets for the close of the taxable years ending May 31, 1990 and 1991. Although respondent's counsel would not stipulate the accuracy of the amounts reflected on the balance sheets, it is those

amounts upon which respondent's adjustments are based. Further, petitioner's bookkeeper computed the payables by totaling bills that were due. The payables did not include expenses that may have properly accrued under the regulations but for which petitioner had not yet been billed.

Additionally, "No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year." Sec. 1.446-1(c)(2)(ii), Income Tax Regs. In this case, respondent did not treat petitioner's accounts payable with consistency. The accounts payable of $98,584 at the beginning of the taxable year included all accounts payable ($86,334) plus all salaries and wages payable ($12,500) reflected on the balance sheet for the taxable year ending May 31, 1990. The accounts payable of $20,120 for the close of the taxable year included only those payables identified as payables related to the cost of goods sold and did not include $5,111 in accounts payable not related to the cost of goods sold or $11,250 in salaries and wages payable to Mr. Asher. Respondent made no adjustments to account for accounts payable at the end of the taxable year related to the $5,111 of operating expenses or related to the $11,250 of salaries and wages payable. Respondent's adjustment of these items was improper. In order to clearly reflect petitioner's income, accounts payable at the

beginning and the end of the year should have been treated in a consistent manner.

If the accounts payable were to be allocated between those related to the cost of goods sold and those related to operating costs, an allocation should also have been made for accounts payable at the beginning of the taxable year. Then proper adjustments could be made to the cost of goods sold and to the deduction for operating expenses.

Additionally, since respondent treated all accounts payable at the beginning of the year as related to the cost of goods sold, there would have been no accounts payable at the beginning of the year related to operating expenses. Therefore, respondent should have increased petitioner's deduction for operating expenses (reducing petitioner's income) by $16,361 to reflect the increase in payables related to operating expenses at the close of the year.

We find respondent's determinations with respect to petitioner's accounts receivable and payable to be unreasonable, arbitrary, and without basis in law.

3.  It Was an Abuse of Respondent's Discretion To Change Petitioner From the Cash Method to Respondent's Improper Method of Accounting

During the 12-month examination of petitioner's records, the agent made no attempt to properly value petitioner's inventories or value payables and receivables under the accrual

- 22 -

method.  Furthermore, although respondent's adjustments were based on the amounts reflected on petitioner's balance sheets, respondent's counsel would not stipulate the accuracy of those amounts.

In Keneipp v. United States, 184 F.2d 263, 268 (D.C. Cir. 1950), the court addressed the Commissioner's power to allocate items of income and stated:

> We perceive no basis upon which the allocation made by the Commissioner of the condemnation award among the several pieces of property can be sustained. * * * The Government's allocation is thus completely erroneous on its face.  The District Court held that since there was a lump-sum award the Commissioner of Internal Revenue had power to make whatever allocation he pleased.  The Commissioner has no such arbitrary power.  He has wide latitude in the ascertainment of the fact as to what were the amounts awarded on account of the several tracts and several pieces of property.  But his ascertainment must be within the realm of the ascertainment of a fact.  He has no unilateral power to allocate as he pleases, and thus to create income as he pleases, where no income, or a different amount of income, exists.  His own published rule is that such an apportionment must be upon the comparative values as of the date of the sale.

We think that the reasoning of the U.S. Court of Appeals for the D.C. Circuit in the Keneipp case is equally applicable in the case at hand.  We do not think there is any legitimate basis for the method imposed upon petitioner.  In this case, the facts clearly show that the method of accounting employed by respondent was not authorized or warranted by any provision of the Internal Revenue Code or the regulations.  Merely

invoking the accrual method without a serious attempt to comply with the rules and regulations governing that method is simply not sufficient. Respondent has no unilateral power to value inventory and allocate amounts to accounts receivable and payable as he pleases in complete disregard of the Internal Revenue Code and the regulations. To do so is an abuse of respondent's discretion.

Respondent contends that petitioner must show a substantial identity of results between the cash method and the method of accounting respondent imposed in order to show an abuse of discretion. We disagree.

The substantial identity of results test is applicable when the taxpayer is required to maintain inventories and the Commissioner has required the taxpayer to compute its income on a proper accrual method of accounting as provided in the regulations. We think it would be an abuse of the Court's discretion to require petitioner to show that the cash method it has consistently used produces substantially the same results as the arbitrary and erroneous method respondent imposed.

Respondent's adjustments based on the improper method increased petitioner's income by $36,002 for the taxable year ending May 31, 1991, but decreased petitioner's income by $113,875 for the taxable year ending May 31, 1992, and created

a net operating loss of $37,636 for the taxable year ending May 31, 1992. Under the circumstances of this case, and given the inadequacies of respondent's method, we think petitioner's use of the cash method produces substantially the same results.

Furthermore, respondent's method not only distorts petitioner's income but will subject petitioner to further adjustments, including adjustments under section 481, in subsequent taxable years if petitioner attempts to properly comply with regulations for accrual method accounting. If, in respondent's opinion, petitioner's accounting method did not clearly reflect its income, the remedy was to require a computation on a basis that would correctly reflect income by proper application of the accrual method of accounting.

The fact that the Commissioner possesses broad authority under section 446(b) does not mean that the Commissioner can change a taxpayer's method of accounting with impunity. See Prabel v. Commissioner, 91 T.C. 1101, 1112-1113 (1988), affd. 882 F.2d 820 (3d Cir. 1989); Wal-Mart Stores, Inc. v. Commissioner, T.C. Memo. 1997-1. The Commissioner cannot require a taxpayer to change his accounting method to one which is unacceptable or wrong. Harden v. Commissioner, 223 F.2d 418, 421 (10th Cir. 1955), revg. and remanding 21 T.C. 781 (1954); Rotolo v. Commissioner, 88 T.C. at 1514. Courts will not approve the Commissioner's change of a taxpayer's

accounting method from an incorrect method to another incorrect method.  Harden v. Commissioner, supra; Prabel v. Commissioner, supra at 1112; see also Dayton Hudson Corp. & Subs. v. Commissioner, T.C. Memo. 1997-260.  The Commissioner's authority is limited to substituting a method that will clearly reflect the taxpayer's income.  Harden v. Commissioner, supra at 421.  The Commissioner is required to use reasonable accounting methods.  Helvering v. Taylor, 293 U.S. 507 (1935); Rubin v. Commissioner, T.C. Memo. 1954-213.  The taxpayer has the burden of showing that the method selected by the Commissioner is incorrect, and that burden is extremely difficult to carry.  Hamilton Indus., Inc. v. Commissioner, 97 T.C. 120 (1991); Photo-Sonics, Inc. v. Commissioner, 42 T.C. 926, 933 (1964), affd. 357 F.2d 656 (9th Cir. 1966).  In this case, petitioner has carried its burden because the facts clearly show that the method selected by the Commissioner is arbitrary, capricious, and without sound basis in fact or law.

In Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1229 (5th Cir. 1978), the court stated:

> While abuse of this discretion by the Commissioner must be proven by a clear showing, Wood v. Commissioner of Internal Revenue, 245 F.2d 888 (5th Cir. 1957), it would seem that such a showing could be predicated upon a decision to use an accounting method that is inaccurate under the circumstances. * * *

We hold it was an abuse of respondent's discretion to require petitioner to change from the cash method to respondent's improper and inaccurate method.

C.  For the Taxable Year at Issue, Petitioner Is Not Required To Change From the Cash Method of Accounting

Courts have recognized that the regulations do not impose an absolute prohibition of the use of the cash method upon a taxpayer who is required to maintain inventories.  Cf. Asphalt Prods. Co. v. Commissioner, 796 F.2d at 849 (an insignificant increase in inventories may be grounds for finding an abuse of discretion by the Commissioner); Estate of Sperling v. Commissioner, 341 F.2d 201, 204 (2d Cir. 1965), affg. T.C. Memo. 1963-260 (courts will not require the Commissioner to place a taxpayer on the accrual method); Drazen v. Commissioner, 34 T.C. 1070, 1079 (1960) (where inventories are so small as to be of no consequence or consist primarily of labor, the presence of inventories is not necessarily sufficient to require a change in the taxpayer's method of accounting).

In Estate of Sperling v. Commissioner, supra, the taxpayer argued that it was required to account for inventories and, therefore, the Commissioner should have used the accrual method in determining the tax deficiency.  The court stated:

> It is difficult to find any basis in reason for thus placing the burden on the Commissioner to place the taxpayer's tax returns on a different accounting

basis. As this case comes to us, * * * [the taxpayer's] 1953 and 1954 tax returns show two defects. The first is that certain alleged credits for the purchase of metals are not adequately documented. The second is the use of an improper accounting method. What the Commissioner has done is to determine deficiencies attributable to the first defect but to leave the second alone. We may guess that this decision was made because it was believed that the game was not worth the candle: the additional deficiencies, if any, which use of the accrual method might reveal would not warrant the considerable effort which a redetermination would require. Whatever the reason, however, we cannot see why the decision should be held improper.

*    *    *    *    *    *    *

Of course, it is possible that the taxpayer's accounting system may be so inadequate that the Commissioner has no choice but to redetermine the liability on the basis of his own system; * * * But where the taxpayer does have a rational, though improper, system, we think that the Commissioner may choose to let it stand and to pursue only specific deficiencies within it. And so long as the deficiencies which he determines are not themselves infected by the system's shortcomings, the taxpayer may not avoid the deficiencies simply by pointing to the inadequacy of his own accounting system. [Id. at 204-205; citation omitted.]

In Keneipp v. United States, 184 F.2d at 268, the court

reversed and remanded for further proceedings. In that case,

the court stated:

such proceedings need not be elaborate or extensive. The Bureau of Internal Revenue has many auditors who can quickly compute the gain properly taxable to these appellants upon the facts of this case and the principles we have referred to.

By contrast, in this case proper application of the accrual method and inventory valuation would require a full audit of petitioner's books and records.  The record does not provide any basis upon which the Court can properly value petitioner's inventory or accounts receivable and payable or otherwise discern petitioner's taxable income under a proper accrual method.  In this case, the erroneous items cannot be discerned with relative clarity and, therefore, cannot be corrected in a computation under Rule 155.  Cf. All-Steel Equip. Inc. v. Commissioner, 54 T.C. 1749 (1970), affd. in part, revd. in part and remanded 467 F.2d 1184 (7th Cir. 1972). The Internal Revenue Code contemplates action by the Commissioner, not the courts.  Harden v. Commissioner, supra at 421.

Since petitioner's cash method is a rational system, we think that the Court may choose to let it stand.  We see no basis for placing a greater burden on the Court than we place on the Commissioner.  See Estate of Sperling v. Commissioner, supra at 203.  We hold that petitioner is not required to change from the cash method of accounting for the taxable year at issue.

II

Whether Respondent's Adjustments Under Section 481 Were Proper

Section 481(a)(1) provides that where in computing a taxpayer's taxable income the computation is under a method of

accounting different from the method under which the taxpayer's income for the preceding taxable year was computed, there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent an amount from being duplicated or omitted. Since we have held that petitioner is not required to change from the cash method for the taxable year at issue, petitioner's taxable income is computed under the same method of accounting as in the previous taxable year. Therefore, petitioner is not subject to any adjustments under section 481.

III

Whether Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662(a)

In its brief, petitioner addressed the accuracy-related penalty only with respect to the change in accounting method. Petitioner concedes that it is not entitled to deduct the loss on the sale of an automobile. The deficiency to be computed under Rule 155 is attributable solely to the disallowance of that loss. Therefore, we hold petitioner is liable for the accuracy-related penalty under section 6662(a).

To reflect the foregoing and because of the concessions by the parties,

Decision will be entered

under Rule 155.